[No. S010191. June 28, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK E. JONES, Defendant and Appellant.

COUNSEL

Gerald T. Blank for Defendant and Appellant.

Robert Sheridan, Cynthia A. Thomas and Richard Power as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White and Richard B. Iglehart, Chief Assistant Attorneys General, Harley D. Mayfield, Assistant Attorney General, Michael D. Wellington, Louis R. Hanoian, Frederick R. Millar, Jr., and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

Michael D. Bradbury, District Attorney (Ventura), and Vincent J. O'Neill, Jr., Chief Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

LUCAS, C. J.—

## I. INTRODUCTION

In this child molestation case, we are presented with difficult questions regarding the extent to which the defendant's due process rights are implicated by the inability of his young accuser to give specific details regarding the time, place and circumstances of various alleged assaults. Frequently, as here, these cases involve the so-called "resident child molester" (see *People v. Van Hoek* (1988) 200 Cal.App.3d 811, 814, & fn. 1 [246 Cal.Rptr. 352]), who either lives with his victim or has continuous access to him or her. In such cases, the victim typically testifies to repeated acts of molestation occurring over a substantial period of time but, lacking any meaningful point of reference, is unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults.

Although the cases are widely conflicting, some courts have concluded that prosecutions based on such nonspecific or "generic" (see, e.g., *People* v.

*Vargas* (1988) 206 Cal.App.3d 831, 845 [253 Cal.Rptr. 894]) testimony deprive the defendant of due process by preventing him from effectively defending against such charges, and by precluding a unanimous jury verdict as to each act charged in the information. (See, e.g., *People* v. *Van Hoek, supra,* 200 Cal.App.3d at pp. 814-818.) Yet testimony describing a series of essentially indistinguishable acts of molestation is frequently the only testimony forthcoming from the victim. To hold that such testimony, however credible and substantial, is inadequate to support molestation charges would anomalously favor the offender who subjects his victim to repeated or continuous assaults. This opinion attempts to accommodate all legitimate due process concerns without immunizing resident child molesters from prosecution.

The problems we address are not isolated ones peculiar to the present case. According to statistics furnished by the California Department of Justice, in California alone, approximately 22,000 cases of child sexual abuse were reported in 1988. (Cal. Dept. Justice, Child Abuse Central Index, Child Abuse Investigation Reports, 1988.) Thus, the issues we explore have evident societal significance.

## II. THE FACTS

Defendant was originally charged with twenty-eight counts of committing, during various time periods alleged in the information, lewd and lascivious acts (hereafter, lewd conduct) on 4 children under the age of 14. (Pen. Code, § 288, subd. (a).) Each count also included allegations that defendant had substantial sexual contact with a child under 11 years old (*id.,* § 1203.066, subd. (a)(8)) and occupied a position of special trust with each child (*id.,* subd. (a)(9)). An amended information was later filed reflecting certain changes in the dates of some offenses. One of the twenty-eight counts was dismissed prior to trial.

The jury was instructed (CALJIC No. 4.71.5) that defendant was charged with lewd conduct during the various periods alleged in the information and that, in order to find him guilty the prosecution must prove beyond a reasonable doubt, and the jury must unanimously agree on, "the commission of the same specific act or acts constituting said crime within the time period alleged." The court further instructed that it was unnecessary for the jury to state in the verdict "the particular act or acts committed and so agreed upon . . . ."

The jury convicted defendant of 12 counts of lewd conduct, finding true 10 allegations of sexual contact with children under 11, and 12 allegations

of special trust. More specifically, the jury found as follows with respect to each of the four boy victims:

*Kenny H.*—Three counts of lewd conduct, each count while Kenny was under eleven years old, and each while occupying a position of special trust.

*Andrew R.*—One count of lewd conduct, with a "special trust" finding.

*Bobby J.*—Two counts of lewd conduct, with "special trust" and "child under 11" findings for each count.

*Sammy J.*—Six counts of lewd conduct, with six "special trust" and five "child under 11" findings.

The jury found defendant not guilty of 12 counts, and it could not reach a verdict as to 3 other counts. Defendant was sentenced to prison for a 15-year term. The Court of Appeal affirmed five counts but reversed seven. Three counts involving Kenny H. were reversed because the trial court allowed a "last minute" amendment to the information after the defense had rested, without allowing defendant to reopen his case. (We do not review that issue here.) Four counts involving Sammy J. were reversed for insufficient evidence. After a more detailed review of the evidence, we will address the merits of the insufficiency issue, and discuss its relationship to the due process issue described above. As will appear, we conclude that the Court of Appeal erred in reversing *any* of the six counts involving Sammy J.

A.   *The Molestations*

At the time of his arrest, defendant was a 38-year-old public school teacher living in Mira Mesa, California. He had initiated single-parent adoption proceedings in 1983, culminating in the adoption that same year of Sammy and Bobby. When these boys moved in with defendant in August and September 1983, they were 10 and 7 years old, respectively.

In June 1985, a social worker received a report from a neighbor of defendant's that she suspected sexual abuse of Sammy and Bobby. The ensuing investigation revealed that defendant had also been molesting two neighborhood boys, Andrew and Kenny, commencing in 1981 and 1983, respectively.

All four boys testified regarding the molestations, each of which involved defendant orally copulating them on numerous occasions. Because the sufficiency and due process issues pertain primarily to Sammy's molestation, we outline the evidence relating to Sammy in greater detail,

italicizing for purposes of clarity the key testimony bearing on frequency and location.

Sammy and Bobby grew up in various foster homes after their mother left them with a "receiving home." In August 1983, defendant visited Sammy in a foster home to explore the possibility of adopting him. The boy was 10 when he moved in with defendant; his brother, Bobby, joined them a month later. According to Sammy, during the first few weeks, he slept with defendant on a king-size waterbed; he later was given his own bed. Defendant first molested Sammy about one month after Sammy came to live with him. The molestations recurred *once or twice a month* during the entire period in which Sammy lived with defendant (Aug. 1983 through June 1985), although there may have been some "breaks" in the period when no molestation occurred for more than a month. Thus, Sammy believed that no such acts were committed during March and April 1984. Sammy, who was 13 years old and in the 6th grade at the time of trial, confirmed that he knew there were 12 months in a year, and 4 weeks in a month.

The assaults usually occurred in bed while Sammy was awake and involved defendant removing Sammy's underpants, placing his head beneath the covers and orally copulating Sammy for about 20 minutes. Sammy was able to recall being molested in a similar manner (oral copulation by defendant) at *five different locations* (listed below), although he had difficulty specifying the exact dates or additional details to further identify these acts.

Thus, Sammy recalled that incidents occurred first (1) in the room he shared with his brother, Bobby. The molestations continued after Sammy and Bobby were placed (2) in separate bedrooms. These acts also occurred (3) in defendant's bedroom where Sammy occasionally slept. Additionally, Sammy was assaulted (4) in the shower or bathroom and (5) on camping trips to Pio Pico.

According to Sammy, defendant molested him *four to six times on camping trips*. On one occasion, while camping over Memorial Day weekend, defendant orally copulated him while they lay in a bed inside the camper. Bobby was sleeping on the floor of the camper and Andrew was sleeping outside. Sammy remembered being molested in a similar fashion on other such camping trips, but he could not remember the exact dates. (He explained that he and Bobby went camping with defendant every other weekend.) These camping molestations always occurred at night inside the camper, while Bobby was sleeping on the floor.

Sammy also remembered being molested *eight or ten times in the bathroom or shower*. Defendant would dry him off, and then orally copulate him.

The last such molestation occurred only a few days before defendant's arrest.

Sammy explained that he had not told anyone about the acts because he loved defendant and wanted to keep living with him, and because he did not want to return to a foster home or adolescent facility. In Sammy's view, defendant was a good father to the boys. As Sammy indicated, "He spanked us when we needed it, though." Sammy felt "uncomfortable" and "confused" about the molestations, but he acknowledged that defendant never used force or threats to accomplish these acts, and no other kinds of sex acts occurred. Sammy agreed that each time he was called on to testify regarding these acts, the events became a little dimmer and receded a little further into the background.

Defendant testified personally, denying that he molested any of the four boys. According to defendant, he had caught Andrew, Bobby and Sammy orally copulating each other, and he suspected they were fabricating the molestation charges to cover up their own misconduct. Defendant also believed Kenny was involved in the sexual misconduct.

B. *The Counts Applicable to Sammy*

The jury found defendant guilty of six counts involving Sammy. The six guilty counts involved the following time periods:

Count 18—September 1, 1983, to October 31, 1983;

Count 19—November 1, 1983, to December 31, 1983;

Count 20—January 1, 1984, to February 29, 1984;

Count 22—May 1, 1984, to June 30, 1984;

Count 23—July 1, 1984, to August 30, 1984;

Count 28—May 1, 1985, to June 30, 1985.

The Court of Appeal affirmed only counts 18 and 28, chronologically the first and last molestations charged. It reversed the intervening counts (19 to 23) for insufficiency of the evidence.

C. *The Court of Appeal Opinion*

For our purposes, the Court of Appeal opinion may be divided into two somewhat interwoven parts, the insufficiency of evidence issue and the due process issue.

### 1. *Insufficiency of Evidence*

The Court of Appeal stated that in order to decide whether substantial evidence supported any one count, "we must determine whether the jurors could identify a time and/or place so that they could unanimously agree on the acts constituting Jones' guilt. We are unable to do so. Our concern is with counts 19, 20, 22, and 23."

The court found sufficient evidence to support counts 18 and 28. The former count was supported by Sammy's testimony that he was initially molested about one month after he moved in with defendant in August 1983. The latter count was supported by Sammy's testimony regarding a molestation occurring on the Memorial Day weekend camping trip in May 1985. But, according to the Court of Appeal, "The remainder of his testimony . . . is non-specific."

The court acknowledged that Sammy attested to continuous molestations during the entire period, including four to six incidents while camping, and eight to ten incidents after showering. But because Sammy could not "describe the specific incidents or dates to enable the jury to differentiate among the various incidents," there was insufficient evidence to support the judgment as to the remaining counts.

### 2. *Due Process*

Defendant also argued that the trial court erred in refusing to require the prosecution to select the specific acts it relied on to establish guilt as to each count or, alternatively, to require the jury to make special findings on each count. Instead, as previously noted, the court gave the jury a unanimity instruction (CALJIC No. 4.71.5) requiring unanimous jury agreement that defendant committed the same specific act or acts constituting the crime within the same period alleged in the information.

Among other arguments, defendant contended that the unanimity instruction was insufficient to assure adequate *appellate* review in this case: because of Sammy's nonspecific testimony, the appellate court was supposedly precluded from determining whether sufficient evidence supported the particular act underlying each count of which defendant was found guilty. Defendant maintained that such inadequate review violated due process.

The Court of Appeal agreed that special jury findings would have aided its review, but concluded that no due process violation occurred. The court observed that a jury verdict need not specify the exact day or hour when the crime occurred. As the court stated, "The jury verdict must only contain

sufficient information which reflects their unanimous selection of specific acts constituting the offense so that the appellate court on review will be able to identify those facts supporting each guilty verdict." In the present case, the Court of Appeal was able "to review the evidence in a manner which satisfies Jones' appellate rights," and accordingly rejected Jones's claim that he had been denied appellate due process.

## III. DISCUSSION

### A. *Introduction*

Child molestation cases frequently involve difficult, even paradoxical, proof problems. A young victim such as Sammy, assertedly molested over a substantial period by a parent or other adult residing in his home, may have no practical way of recollecting, reconstructing, distinguishing or identifying by "specific incidents or dates" all or even any such incidents. (Indeed, even a mature victim might understandably be hard pressed to separate particular incidents of repetitive molestations by time, place or circumstance. See *People v. Luna* (1988) 204 Cal.App.3d 726, 748 [250 Cal.Rptr. 878].) Accordingly, any constitutional principles or evidentiary standards we develop should attempt to assure that the resident child molester is not immunized from substantial criminal liability merely because he has repeatedly molested his victim over an extended period of time.

On the other hand, the defendant has a due process right to fair notice of the charges against him and reasonable opportunity to defend against those charges. In addition, the defendant is entitled to a verdict in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged. Finally, the defendant's conviction can be sustained only if supported by substantial evidence. As we shall see, some courts have weighed the foregoing legitimate concerns with the difficult proof problems arising in these cases and have concluded that the victim's inability to differentiate sufficiently between various acts of molestation is fatal (on *either* due process or insufficiency of evidence grounds) to sustaining a conviction.

We first review some of the previous decisions that have addressed the foregoing concerns, and then attempt to reconcile those cases and the competing policies on which they rely.

### B. *Prior Case Law*

Much of the analytical difficulty in this area is attributable to two early decisions of this court, *People v. Castro* (1901) 133 Cal. 11 [65 P. 13]

(hereafter *Castro*) and *People* v. *Williams* (1901) 133 Cal. 165 [65 P. 323] (hereafter *Williams*).

In *Castro*, the information charged the defendant with only *one* count of raping a child under the age of consent, allegedly committed on June 30, 1899. At trial, however, evidence regarding *four* separate acts of rape was admitted, extending over a period of several months, none occurring on June 30. Following a guilty verdict, the trial court granted a new trial. We affirmed, observing that although the variance in proof was permissible, "certainly, the defendant was not called upon to defend himself against all of these respective acts of intercourse, extending through a period of several months. The information only charged one act, and upon that allegation the case must stand or fall." (133 Cal. at p. 13.) We further stated that although any one of the four acts could suffice to sustain the conviction, the People should have been required, at the commencement of trial, to select the act they relied on to prove the allegations of the information. (*Ibid.*)

In *Williams*, the defendant likewise was charged with and convicted of *one* count of rape of a child under the age of consent. The victim testified she lived with defendant for four months, and that an act of intercourse occurred nearly every day (sometimes five or six times daily), as well as many other sexual acts. We noted that although the People could have tried defendant for each separate act, only one offense was charged and the jury was not instructed it must unanimously agree that "some specifically described act had been performed." (133 Cal. at p. 168.) Thus, the guilty verdict could have been rendered even though no two jurors agreed beyond a reasonable doubt that one specific act had been committed.

We continued by inquiring, "how could [the accused] defend when he was not informed as to what particular offense, out of hundreds testified to by the prosecutrix, he was to be tried? Such a trial, upon a charge so indefinite as to circumstance of time or place, or any particular, except by the general designation, would be a judicial farce, if it were not something a great deal worse." (*Williams, supra*, 133 Cal. at p. 168.) Hence, we concluded in *Williams* that the People must charge a specific offense and prove it occurred; other uncharged incidents are relevant only for the purpose of proving the one specific offense charged. We noted that although the particular date or time of the offense is immaterial (assuming it occurred within the applicable statute of limitations), the defendant is nonetheless entitled to demand the charge against him be stated in ordinary and concise language, so that he knows the specific charge and can defend against it. (*Id.*, at pp. 168-169.) After suggesting that in such cases the People should be required to select at trial the specific offense to be proved (*id.*, at p. 169), we reversed the judgment of conviction.

Following *Castro* and *Williams,* several decisions of the Court of Appeal developed the so-called "either/or" rule applicable where the number of specific sex acts adduced at trial exceeds the number of such acts pleaded in the information: Either the prosecutor must select the acts relied on to prove the charges, or the jury must be given an instruction that it must unanimously agree beyond a reasonable doubt that the defendant committed the same specific criminal act. (See, e.g., *People* v. *Sanchez* (1989) 208 Cal.App.3d 721, 746-747 [256 Cal.Rptr. 446] [affirming 20-count molestation conviction, involving 3-year period, because unanimity instruction assured a unanimous determination that defendant committed the act charged for each time period]; *People* v. *Martinez* (1988) 197 Cal.App.3d 767, 772-775 [243 Cal.Rptr. 66] [sua sponte duty to give unanimity instruction, where victim testified regarding some 200 acts, but information charged only 20]; *People* v. *Callan* (1985) 174 Cal.App.3d 1101, 1111-1112 [220 Cal.Rptr. 339] [unanimity instruction saves uncertainty as to specific acts relied on by People]; *People* v. *Gordon* (1985) 165 Cal.App.3d 839, 855-856 [212 Cal.Rptr. 174] [failure to give unanimity instruction prejudicial where jurors might have disagreed as to which acts defendant committed]; *People* v. *Dunnahoo* (1984) 152 Cal.App.3d 561, 572-573 [199 Cal.Rptr. 796] [convictions affirmed where unanimity instruction given]; *People* v. *Madden* (1981) 116 Cal.App.3d 212, 219 [171 Cal.Rptr. 897] [error to fail to give unanimity instruction sua sponte, where information charged fewer acts than shown by evidence]; *People* v. *Alva* (1979) 90 Cal.App.3d 418, 424-426 [153 Cal.Rptr. 644] [same].)

Some cases found harmless any error in failing either to select specific offenses or give a unanimity instruction, if the record indicated the jury resolved the basic credibility dispute against the defendant and would have convicted the defendant of *any* of the various offenses shown by the evidence to have been committed. (*People* v. *Moore* (1989) 211 Cal.App.3d 1400, 1415-1416 [260 Cal.Rptr. 134]; *People* v. *Winkle* (1988) 206 Cal.App.3d 822, 828-830 [253 Cal.Rptr. 726]; *People* v. *Schultz* (1987) 192 Cal.App.3d 535, 539-540 [237 Cal.Rptr. 513]; *People* v. *Deletto* (1983) 147 Cal.App.3d 458, 466, 470-473, & fn. 10 [195 Cal.Rptr. 233].)

For example, in *Winkle* the court sustained a conviction of one count of lewd conduct based on testimony by the child victim that defendant, her uncle, molested her regularly each week at her home or at his workplace. Although no prosecutorial election was made and no unanimity instruction was given, the court concluded that no prejudicial error occurred. The defendant made only a weak attempt to assert an alibi defense; in essence the trial involved a question of credibility, and the jury's verdict necessarily implied that it believed the victim. Under such circumstances, no unanimity instruction was needed. Indeed, "In a situation in which a very young child

testifies about a series of similar molestations without identifying any specific dates, the unanimity instruction should not be given as it would be confusing for the jury to be given an instruction requiring them to agree on a specific act, when there is no specific act for them to agree upon." (*People v. Winkle, supra,* 206 Cal.App.3d at p. 830.)

As previously indicated, a unanimity instruction (CALJIC No. 4.71.5) was given in the present case. But some cases, such as *Winkle,* have observed that although a prosecutorial election or unanimity instruction can help focus the jury on the same specific act where evidence of several distinct acts has been elicited, nonetheless neither an election nor a unanimity instruction is very helpful where the victim is unable to distinguish between a series of acts, any one of which could constitute the charged offense. In a case consisting only of "generic" evidence of repeated sex acts, it would be impossible for the prosecutor to select a specific act he relies on to prove the charge, or for the jury to unanimously agree the defendant committed the same specific act. (*People v. Winkle, supra,* 206 Cal.App.3d at p. 830; see *People v. Van Hoek, supra,* 200 Cal.App.3d at pp. 816-817.)

The lower courts have reached varying conclusions as to the consequences of the inability of the victim, prosecutor, defendant or jury to focus on a specific criminal act to support a conviction. Indeed, the broad conflict created by these decisions induced this court to grant the petition for review in this case.

Some cases, following their own interpretation of our *Castro* and *Williams* decisions, and applying due process principles, have held that purely generic testimony outlining repeated and continuous molestations without distinguishing between time, place or circumstance, is insufficient to sustain a conviction, because the prosecutor cannot prove any specific act corresponding to the act alleged in the information, the defendant cannot defend against any such act, and the jury cannot unanimously agree beyond a reasonable doubt that any such act occurred. (See *People v. Vargas, supra,* 206 Cal.App.3d at pp. 846-847 [reversing ten-count conviction for molesting stepdaughter over one-year period]; *People v. Luna, supra,* 204 Cal.App.3d at pp. 738-749 [reversing three counts of six-count conviction for molesting stepdaughter over three-year period]; *People v. Atkins* (1988) 203 Cal.App.3d 15, 19-23 [249 Cal.Rptr. 863] [reversing two-count conviction for molesting stepdaughter over two-year period]; *People v. Van Hoek, supra,* 200 Cal.App.3d at pp. 814-818 [reversing conviction for molesting daughter over ten-year period]; *People v. Creighton* (1976) 57 Cal.App.3d 314 [129 Cal.Rptr. 249]; *People v. Abdullah* (1933) 134 Cal.App. 155, 158-159 [25 P.2d 40].)

In *People* v. *Van Hoek, supra,* 200 Cal.App.3d 811, the leading case in this line of decisions, the defendant was accused of molesting his daughter from her third through her thirteenth year. According to the victim, the molestations always began in the same way: Her father would talk sweetly to her, kiss her, and then caress her breasts or vagina. Five or six acts of sexual intercourse occurred when she was twelve and thirteen, although the victim could not link these acts to any specific date, holiday, birthday or other significant event. The court determined "there was nothing to enable the jury to tie the specific instance to a specific charge. Thus, all that is left to support the charges is [the victim's] generic and amorphous testimony." (200 Cal.App.3d at p. 814.)

The *Van Hoek* court acknowledged that the resident child molester cases pose perplexing questions. On the one hand, the young victim "might not have a meaningful reference point of time or detail by which to distinguish one specific act from another. The concern is that this problem will be exacerbated the more frequent and repetitive the molestation and the younger the victim. Thus, the prosecution's ability to establish one or more specific acts via the testimony of the minor victim decreases." (200 Cal.App.3d at p. 814.) Because corroborating evidence seldom exists, "[t]o render such testimony inadequate as a matter of law under circumstances like those here under discussion could effectively insulate the most egregious child molesters from prosecution." (*Ibid.*)

But *Van Hoek* believed our *Castro* and *Williams* decisions raised insurmountable due process obstacles to successful prosecution of these cases. (See 200 Cal.App.3d at pp. 814-815) First, the court recognized that the unanimity instruction and "either/or rule" were of little assistance in generic testimony cases. The instruction operates effectively where the evidence discloses several *specific* acts, and the People have failed to select the act on which they rely. But in generic testimony cases, "there is a failure to present evidence of *any* specific act to support the charged crime. Where, as here, the evidence is that many of such acts were committed over an extended period of time, it would be impossible for the prosecution to 'select the specific act relied upon to prove the charge' and equally impossible for the jury to 'unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act.' " (*Id.*, at p. 816, quoting *Williams, supra,* 133 Cal. 165, 168.)

*Van Hoek* reasoned that when the victim's testimony is "bland and unspecific" as to any occasion and yet involves accusations of numerous incidents, it would be impossible for the jury to unanimously agree on one specific act for each charge. Such impossibility is fatal to the prosecution because "Implicit in the cases requiring specificity of charges and the

charges being supported by specific testimony given at trial is the fundamental due process rule, steeped in antiquity, that the prosecution must prove a specific act and the twelve jurors must agree on one specific act." (*People* v. *Van Hoek, supra*, 200 Cal.App.3d at p. 817.)

In addition to the inability of the jury to agree unanimously on one specific act for each count in the information, *Van Hoek* posited that a defendant cannot effectively mount a defense to nonspecific molestation charges. According to *Van Hoek*, a defendant would "virtually be precluded from presenting an alibi defense to the acts unless he could account for every time he was in the presence of the victim . . . . The defendant would virtually have to account for every day of the last five years . . . ." (*People* v. *Van Hoek, supra*, 200 Cal.App.3d at p. 817.) Also, the defendant in such cases is precluded from attacking the victim's testimony "in any way other than a general attack," and cannot challenge the specifics of the act to undermine the victim's credibility as to details. The court concluded that in the case before it, the victim's testimony was "a blur of acts, nonspecific as to a particular occasion." (*Ibid.*)

Several cases following *Van Hoek* not only reversed molestation convictions on due process grounds, but *barred retrial* of the charges on the apparent theory that the nonspecific testimony was insufficient to support a conviction. (*People* v. *Luna, supra*, 204 Cal.App.3d at p. 743; *People* v. *Atkins, supra*, 203 Cal.App.3d at p. 19; see *People* v. *Vargas, supra*, 206 Cal.App.3d at pp. 847-854 [following but criticizing *Luna* and *Atkins* insofar as they would bar retrial].)

Some courts, including the Court of Appeal in the present case, have called on this court, or the Legislature, to reconsider or redefine the principles relied on in such cases as *Castro, Williams* and *Van Hoek*. (See, e.g. *People* v. *Moreno* (1989) 211 Cal.App.3d 776, 789, fn. 3 [259 Cal.Rptr. 800]; *People* v. *Vargas, supra*, 206 Cal.App.3d at pp. 854-855; *People* v. *Luna, supra*, 204 Cal.App.3d at pp. 746, 749.) Indeed, we note that in 1989 legislation was passed which creates a new offense of "continuous sexual abuse of a child," punishable by a prison term of six, twelve or sixteen years, on proof of three or more lewd or "substantial" sexual acts with a child under fourteen over a period of at least three months, and unanimous jury agreement that three or more such acts occurred. (Pen. Code, § 288.5.)

The new section recites that the jury need not unanimously agree "on which acts constitute the requisite number" as long as the jury unanimously agrees that at least three acts occurred within the three-month period. Moreover, the section does not contain any requirement of particularity or specificity of the victim's testimony. Thus, if the constitutional impediments

discerned by *Van Hoek*, et al., are valid, this statute may face similar due process challenges. In other words, passage of this legislation does not render moot our present discussion. (See also *People* v. *Winkle, supra,* 206 Cal.App.3d at p. 826; *People* v. *Luna, supra,* 204 Cal.App.3d at pp. 746-747; and *People* v. *Madden, supra,* 116 Cal.App.3d at pp. 217-218 [each of which mentions, but finds inapplicable, the so-called "continuous conduct" exception to the jury unanimity requirement].)

Another recent line of cases has taken issue with *Van Hoek* and its progeny and has concluded that the due process and evidentiary concerns that troubled us in *Castro* and *Williams* do not outweigh the state's interest in fully prosecuting and convicting resident child molesters. (See *People* v. *Moore, supra,* 211 Cal.App.3d at pp. 1408-1416; *People* v. *Moreno, supra,* 211 Cal.App.3d at pp. 786-790; *People* v. *Avina* (1989) 211 Cal.App.3d 48, 52-57 [259 Cal.Rptr. 178]; *People* v. *Coulter* (1989) 209 Cal.App.3d 506, 511-514 [257 Cal.Rptr. 391]; *People* v. *Obremski* (1989) 207 Cal.App.3d 1346, 1351-1354 [255 Cal.Rptr. 715]; *People* v. *Jeff* (1988) 204 Cal.App.3d 309, 339-343 [255 Cal.Rptr. 715]; cf. *People* v. *Sanchez, supra,* 208 Cal.App.3d at pp. 742, 746-747 [finding victim's testimony sufficiently specific to sustain 20-count conviction despite generic description of approximately 1,380 separate offenses]; *People* v. *Vargas, supra,* 206 Cal.App.3d at pp. 854-855 [following *Van Hoek,* but urging our review]; *People* v. *Martinez, supra,* 197 Cal.App.3d at p. 779 [dis. opn.]; *People* v. *Gordon, supra,* 165 Cal.App.3d at pp. 868-873 [conc. opn.]; *People* v. *Osuna* (1984) 161 Cal.App.3d 429, 433 [207 Cal.Rptr. 641]; *People* v. *Dunnahoo, supra,* 152 Cal.App.3d at pp. 570-573.)

Several of the foregoing cases cite Justice Sims's concurring opinion in *People* v. *Gordon, supra,* 165 Cal.App.3d 839, 865, which explained that recent expansion of criminal defendants' due process rights and procedural protections casts doubt on the continued validity of *Castro* and *Williams,* at least as applied to generic testimony by molested children. For example, in *People* v. *Jeff, supra,* 204 Cal.App.3d 309, the defendant was charged with 33 counts of various acts of molestation against his niece, including rape, sodomy, oral copulation and lewd conduct. The victim testified to some specific acts, but much of her testimony was generic (e.g., intercourse occurred "a lot" during summer of 1984; these acts occurred "more than three" times one summer). The *Jeff* majority, citing the *Gordon* concurrence, rejected the argument that due process considerations would preclude sustaining a conviction based on such testimony. (See *id.,* at pp. 341-342.)

Thus, according to *Jeff,* a defendant cannot complain about the lack of specificity of the charges if he is notified by the information of the nature of

the conduct he is accused of, and if the evidence elicited at the preliminary examination informs him of the particular matters that the prosecutor will attempt to prove at trial. As *Jeff* observes, the information has a "limited role" of informing defendant of the kinds and number of offenses; "the time, place, and circumstances of charged offenses are left to the preliminary hearing transcript," which represents "the touchstone of due process notice to a defendant." (*People* v. *Jeff, supra,* 204 Cal.App.3d at p. 342; see also *People* v. *Thomas* (1987) 43 Cal.3d 818, 829 [239 Cal.Rptr. 307, 740 P.2d 419]; *People* v. *Martinez, supra,* 197 Cal.App.3d at pp. 779-780 [dis. opn.]; *People* v. *Gordon, supra,* 165 Cal.App.3d at pp. 868-870 [conc. opn.]; *People* v. *Dunnahoo, supra,* 152 Cal.App.3d at p. 571.)

*Jeff* concluded that "So long as the evidence presented at the preliminary hearing supports the number of offenses charged against defendant and covers the time frame[s] charged in the information, a defendant has all the notice the Constitution requires. The defendant may demur if he or she believes the lack of greater specificity hampers the ability to defend against the charges." (*People* v. *Jeff, supra,* 204 Cal.App.3d at p. 342.)

As for the substantiality of the evidence, *Jeff* found sufficient generic testimony that identified the type of offense (rape, sodomy and oral copulation), the general time period (each summer month between first and fourth grades, during weekdays), and general location (usually the victim's bed). As *Jeff* observed, "More specificity . . . is desirable, depending on the age of the victim, the number of incidents involved, the similarity of some of the incidents to another or others, and the time lapse between occurrence and trial. However, such specificity may not always be possible." (*People* v. *Jeff, supra,* 204 Cal.App.3d at p. 343; see also *People* v. *Avina, supra,* 211 Cal.App.3d at p. 56 ["Courts should not require that a child victim of sexual abuse be able to testify about the time of the offense with more precision than the victims of other types of crimes."]; *People* v. *Coulter, supra,* 209 Cal.App.3d at pp. 513-514; *People* v. *Obremski, supra,* 207 Cal.App.3d at p. 1354.)

A dissenting justice in *Jeff* would have reversed the counts based on generic testimony, because the jury could not single out and unanimously agree that the defendant committed a specific act identifiable by time, place or circumstance. (*People* v. *Jeff, supra,* 204 Cal.App.3d at pp. 345-348.)

In another recent case, *People* v. *Obremski, supra,* 207 Cal.App.3d 1346, defendant was convicted of 25 counts of lewd conduct committed against his stepdaughter over a 4-year period. The victim's testimony indicated that these acts occurred frequently, sometimes thrice daily, although she could not recount specific incidents. Affirming the conviction despite the generic

nature of the victim's testimony, *Obremski* rejected *Van Hoek*'s due process analysis as one which effectively would insulate the resident child molester from prosecution.

According to the *Obremski* court, the defendant never suggested he relied on an alibi defense, and accordingly he could not claim prejudice in defending against the charges. *Obremski* observed that the primary issue in these cases is not alibi or identification, but the credibility of accuser and accused. Requiring the People to plead and prove specific acts of molestation would result in prosecuting only those defendants who select victims with good memories, or who commit the fewest acts. (*People* v. *Obremski, supra,* 207 Cal.App.3d at p. 1353; see *People* v. *Luna, supra,* 204 Cal.App.3d at p. 748.) As stated in *Luna,* "Multiple sex offenses committed by adults upon immature and inarticulate children over a long period of time are very likely to result in an amalgamation of the crimes in the child's mind. The child is unlikely to be able to give any testimony approximating the date of any one separately describable offense even in the uncomplicated case. Where the number of offenses is so numerous even an adult would not be able to count them, the child's testimony will often be reduced to a general, and customarily abbreviated, recitation of what happened on a continuing basis." (204 Cal.App.3d at p. 748.)

## C. *Analysis*

We now attempt to synthesize some of the principles and concerns expressed in the foregoing cases, and to balance the defendant's legitimate due process rights with the interests of the People in securing convictions in appropriate cases. Initially, we discuss the insufficiency of evidence issue and then turn to the due process principles applicable to these cases. After suggesting some "ground rules," we next apply those rules to the facts of the present case.

### 1. *Insufficiency of Evidence*

■ A judgment must be supported by substantial evidence in light of the whole record. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) ■ As previously noted, some Court of Appeal cases, including the court below, suggest that purely generic testimony regarding molestations cannot be regarded as substantial evidence, and this defect both requires reversal of the conviction and bars retrial of those offenses. (See *People* v. *Luna, supra,* 204 Cal.App.3d at p. 743; *People* v. *Atkins, supra,* 203 Cal.App.3d at p. 19.) Other courts disagree, concluding that generic testimony is sufficiently substantial from an evidentiary standpoint. (*People* v. *Moore, supra,* 211

Cal.App.3d at p. 1412; *People* v. *Vargas, supra,* 206 Cal.App.3d at pp. 847-854.)

In our view, the latter line of cases makes more sense. It must be remembered that even generic testimony (e.g., an act of intercourse "once a month for three years") outlines a series of *specific,* albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction. (Of course, prosecutors should exercise discretion in limiting the number of separate counts charged. No valid purpose would be served by charging hundreds or thousands of separate counts of molestation, when even one count may result in a substantial punishment.)

The question arises, then, as to the minimum quantum of proof necessary to support a conviction on one or more counts based on such generic testimony.

■  The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]; *People* v. *Johnson, supra,* 26 Cal.3d at pp. 576-578.) On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*Johnson, supra,* 26 Cal.3d at pp. 576-577.)

Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. (*Barnes, supra,* 42 Cal.3d at p. 303.) Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. (*Id.,* at pp. 303-304; see also *People* v. *Mayberry* (1975) 15 Cal.3d 143, 150 [125 Cal.Rptr. 745, 542 P.2d 1337] [reviewing claim of inherent improbability of testimony].)

The insistence of some cases on greater specificity of a child victim's testimony may reflect persistent doubts about the general credibility of that testimony. (See, e.g., *People* v. *Abdullah, supra,* 134 Cal.App. at p. 158 [molestation charges are "dangerous," being "so easy to charge and so difficult to meet"]; cf. *People* v. *Thomas* (1978) 20 Cal.3d 457, 471-474 [143 Cal.Rptr. 215, 573 P.2d 433] [dis. opn., noting that children may be subject to suggestion, manipulation by adults, fantasies, etc.].) Yet, as explained above, it is not a proper appellate function to reassess the credibility of the

witnesses. ■ Moreover, it is now well established that a child's testimony cannot be deemed insubstantial merely because of his or her youth. Thus, "under present law, no distinction is made between the competence of young children and that of other witnesses [citations]." (*People* v. *Thomas, supra,* 20 Cal.3d at p. 471; see *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 882, & fn. 6 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845]; *People* v. *Vargas, supra,* 206 Cal.App.3d at pp. 852-853 [disputing argument that generic testimony in child molestation cases is especially subject to disbelief or doubt].)

Recent studies have undermined traditional notions regarding the unreliability of child witnesses, their untruthfulness, susceptibility to leading questions, or inability to recall prior events accurately. "Empirical studies have produced results indicating that most of these traditional assumptions are completely unfounded." (Foté, *Child Witnesses in Sexual Abuse Criminal Proceedings: Their Capabilities, Special Problems, and Proposals for Reform* (1986) 13 Pepperdine L.Rev. 157, 158; see also Comment, *Child Sexual Abuse in California* (1985) 15 Golden Gate L.Rev. 437, 459-460; Myers, *The Child Witness, Techniques for Direct Examination* (1986) 18 Pacific L.J. 801, 827 [noting difficulty of many children in remembering exact dates]; *People* v. *Luna, supra,* 204 Cal.App.3d at p. 749 [observing "revolutionary change" with respect to credibility extended to victims of sexual assaults]; see generally Myers, Child Witness Law and Practice (1987) pp. 53-120.)

In 1986, the Legislature adopted the modern view regarding the credibility of child witnesses by enacting Penal Code section 1127f, which provides that "In any criminal trial or proceeding in which a child 10 years of age or younger testifies as a witness, upon the request of a party, the court shall instruct the jury as follows: [¶] In evaluating the testimony of a child you should consider all of the factors surrounding the child's testimony, including the age of the child and any evidence regarding the child's level of cognitive development. Although, because of age and level of cognitive development, a child may perform differently as a witness from an adult, *that does not mean that a child is any more or less credible a witness than an adult. You should not discount or distrust the testimony of a child solely because he or she is a child.*" (Italics added.)

■ Thus, in determining the sufficiency of generic testimony, we must focus on factors other than the youth of the victim/witness. Does the victim's failure to specify precise date, time, place or circumstance render generic testimony insufficient? Clearly not. As many of the cases make clear, the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction. (*People*

v. *Moreno, supra,* 211 Cal.App.3d at p. 792; *People* v. *Avina, supra,* 211 Cal.App.3d at pp. 56-57; *People* v. *Jeff, supra,* 204 Cal.App.3d at pp. 341-343.)

The victim, of course, must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., "twice a month" or "every time we went camping"). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., "the summer before my fourth grade," or "during each Sunday morning after he came to live with us"), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction.

In *People* v. *Moore, supra,* 211 Cal.App.3d 1400, for example, one count of the information charged an act of rape occurred during the period from June 1 to August 31, 1985. The victim's testimony, however, outlined a series of undifferentiated rapes "almost every night" during that period. After reviewing many of the conflicting cases discussed above, the court sustained the conviction, ruling that the evidence of guilt was substantial despite its nonspecific character. (*Id.,* at p. 1412; see also *People* v. *Vargas, supra,* 206 Cal.App.3d at pp. 850-851; *People* v. *Avina, supra,* 211 Cal.App.3d at p. 56.)

We concur with the *Moore* analysis. There, the victim specified the type of conduct involved (rape) and its frequency ("almost every night" for three months), and confirmed that such conduct occurred during the limitation period. Nothing more is required to establish the substantiality of the victim's testimony in child molestation cases.

### 2. *Due Process Concerns*

In many child molestation cases, two specific due process rights are invoked, namely, the right to prepare and present a defense, and the right to a unanimous jury. (As previously discussed, the Court of Appeal herein discussed and rejected the additional contention that the defendant's "appellate due process" rights were implicated. This contention seemingly is encompassed by the general due process principles discussed below.)

### a. Right to Defend

■ The "preeminent" due process principle is that one accused of a crime must be "informed of the nature and cause of the accusation." (U.S. Const., Amend. VI.) Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial. (*People* v. *Thomas, supra,* 43 Cal.3d at p. 823, and cases cited.)

■ Thus, the right to defend has two related components, namely, the right to *notice* of the charges, and the right to *present a defense* to those charges.

i. *Right to notice*—As previously observed, it has been suggested that under modern procedures a defendant's due process rights are now protected to a greater degree than when our *Castro* and *Williams* cases were decided. As Justice Sims noted in his concurring opinion in *People* v. *Gordon, supra,* 165 Cal.App.3d at pages 868-869, "In my view, modern procedures in criminal cases have eroded if not eliminated *Williams'* concerns about fair notice in the indictment process . . . . [¶] It is clear that in modern criminal prosecutions initiated by informations, the transcript of the preliminary hearing, not the accusatory pleading, affords defendant practical notice of the criminal acts against which he must defend."

Justice Sims also explained (*People* v. *Gordon, supra,* 165 Cal.App.3d at pp. 870-871) that the defendant has no right to notice of the specific time or place of an offense, so long as it occurred within the applicable limitation period. "Beyond that, . . . the prosecution clearly has no duty to provide more explicit notice than human nature and science permit." (*Id.,* at p. 868.) According to Justice Sims the "modern answer" to *Williams*'s rhetorical inquiry as to how defendant can prepare a defense against non-specific molestation charges "is that, at a minimum, a defendant must be prepared to defend against all offenses of the kind alleged in the information as are shown by evidence at the preliminary hearing to have occurred within the timeframe pleaded in the information." (*Id.,* at pp. 870-871; see also *People* v. *Luna, supra,* 204 Cal.App.3d at p. 748.)

In addition to the advance notice provided by the information and preliminary examination, the cases observe that defendant may learn further critical details of the People's case through demurrer to the complaint or pretrial discovery procedures. (See *People* v. *Jeff, supra,* 204 Cal.App.3d at p. 342; *People* v. *Martinez, supra,* 197 Cal.App.3d at pp. 779-780 [dis. opn.]; cf. Pen. Code, § 1002 et seq. [demurrer procedure]; *Pitchess* v. *Superior*

*Court* (1974) 11 Cal.3d 531, 535-538 [113 Cal.Rptr. 897, 522 P.2d 305] [discovery procedure].)

■ We conclude that, given the availability of the preliminary hearing, demurrer and pretrial discovery procedures, the prosecution of child molestation charges based on generic testimony does not, of itself, result in a denial of a defendant's due process right to fair notice of the charges against him.

We note that, by reason of the recent passage of an initiative measure (Prop. 115 at the June 4, 1990, Primary Elec.), the defendants in some future cases may not have the benefit of a preliminary examination (see Cal. Const. art. I, § 14.1, dispensing with postindictment preliminary hearings for felonies prosecuted by indictment), or the full range of discovery available prior to adoption of the measure (see Pen. Code, § 1054.1, adopting new criminal discovery procedures). But the measure's passage does not substantially change our analysis or disposition herein.

First, Proposition 115 is currently the subject of constitutional challenges which could result in a judgment declaring it invalid in whole or in part. (See *Raven* v. *Deukmejian* (S016137, pending in this court).*)

Second, the foregoing new pretrial provisions are, of course, inapplicable to the present case or any other cases which have already proceeded to trial.

Third, although the question remains open, the new provisions ultimately might be ruled inapplicable to offenses committed prior to its enactment. (See *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149] [prospective application for Prop. 8].)

Fourth, new section 14.1 of article I of the California Constitution does not dispense with preliminary examinations entirely, but only in those cases prosecuted by indictment. Recent statistics indicate a clear preference for prosecutions by information, perhaps reflecting practical limitations on the ability of grand juries to hear substantial numbers of criminal cases. According to statistics compiled by the California Department of Justice, Division of Law Enforcement, Bureau of Criminal Statistics, of approximately 275,000 felony arrests in 1989, only 20 were prosecuted by way of indictment, *none* of which involved a child sexual abuse offense.

Fifth, the unavailability of a preliminary examination does not necessarily preclude the defendant from learning the details of the charges filed against him. In cases prosecuted by indictment, every indicted defendant is entitled to a complete transcript of the proceedings (Pen. Code, § 938.1),

---

* Reporter's Note: See 52 Cal.3d 336 for Supreme Court opinion.

and the names of all witnesses examined by the grand jury must be included in the indictment (*id.*, § 995a, subd. (a)). Moreover, Proposition 115 codifies many judicially created discovery procedures. The prosecution will be required to disclose to defense counsel, among other things, the names and addresses of all persons to be called as trial witnesses, any relevant written or recorded statements of those witnesses, and "[a]ny exculpatory evidence." (*Id.*, § 1054.1.)

Sixth, a defendant who is unable prior to trial to learn material details of a victim's testimony may request a continuance of trial on a proper showing of good cause. (Pen. Code, § 1050.) Good cause could include surprise regarding a witness's testimony or a last-minute amendment to the information. (See *People* v. *Wrigley* (1968) 69 Cal.2d 149, 159-160 [70 Cal.Rptr. 116, 443 P.2d 580] [child molestation victim testified to acts occurring outside period alleged in information]; *People* v. *Murphy* (1963) 59 Cal.2d 818, 827-828 [31 Cal.Rptr. 306, 382 P.3d 346] [last-minute change in information]; 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2514, p. 3017, and cases cited.)

For all the foregoing reasons, we conclude the recent passage of Proposition 115 does not affect or alter our analysis in this case.

ii. *Right to present a defense*— ▇ Does the fact that the child victim cannot recall or relate specific dates, locations or other details of the offenses inevitably preclude a defense? We think not. Defendant stresses his inability to assert an alibi defense to generic charges. But as explained in several decisions, only infrequently can an alibi or identity defense be raised in resident child molester cases. Usually, the trial centers on a basic credibility issue—the victim testifies to a long series of molestations and the defendant denies that any wrongful touchings occurred. (E.g., *People* v. *Moreno, supra*, 211 Cal.App.3d at pp. 787-788; *People* v. *Obremski, supra*, 207 Cal.App.3d at p. 1353; *People* v. *Dunnahoo, supra*, 152 Cal.App.3d at p. 572.) As indicated in *Dunnahoo*, if the defendant has lived with the victim for an extensive, uninterrupted period and therefore had continuous access to the victim, neither alibi nor wrongful identification is likely to be an available defense. (152 Cal.App.3d at p. 572.)

Even when an alibi defense is tendered, there is no reason why the jury would be less inclined to credit the defense as applied to appropriate counts, merely because the victim's generic testimony has implicated the defendant in additional counts or offenses not challenged by the alibi. Indeed, the fact that the defendant has established an alibi covering some of the time periods alleged in the information could significantly undermine the victim's testimony as to the remaining counts.

As indicated previously, some of the due process concerns in the earlier cases may have been founded on the view that a child's testimony, especially in sex cases, is inherently untrustworthy. Yet it is now well settled that "no distinction is made between the competence of young children and that of other witnesses." (*People* v. *Thomas, supra,* 20 Cal.3d at p. 471; see also Pen. Code, § 1127f [testimony of child under 10 not discounted or distrusted solely on ground of youth].)

Moreover, contrary to the stated assumptions of *Castro, supra,* 133 Cal. 11, and *Williams, supra,* 133 Cal. 165, generic child molestation charges by no means deprive the defendant of a reasonable opportunity to defend. Initially, of course, the defendant has the option of taking the witness stand and directly denying any wrongdoing. If credible, his testimony should prevail over the unspecific assertions of his young accuser. In some cases, the very nonspecificity of the child's testimony, especially if uncorroborated, may offer defense counsel fertile field for challenging the child's credibility. (See generally Myers, *supra,* Child Witness Law and Practice, pp. 181-258 [cross-examination techniques].) In addition to the defendant's direct testimony, his cross-examination of the child and supporting witnesses, and the availability of the cautionary instruction mandated by Penal Code section 1127f, the defendant may be permitted to introduce expert character evidence, based on standardized tests and personal interviews, to the effect that his personality profile does not include a capacity for deviant behavior against children. (See *People* v. *Stoll* (1989) 49 Cal.3d 1136, 1161 [265 Cal.Rptr. 111, 783 P.2d 698].)

As explained in *People* v. *Moreno, supra,* 211 Cal.App.3d 776, 788, besides merely denying the charges, the defendant may introduce evidence outlining the victim's past fabrications and offering innocent explanations for the victim's apparent knowledge of or familiarity with sexual behavior generally or the defendant's physical characteristics in particular, as well as expert testimony refuting or contradicting any physical evidence of molestation.

Finally, supplementing the usual defense trial techniques, the defendant has a variety of procedural due process remedies available to obtain relief from unwarranted prosecution or punishment, including demurrers (Pen. Code, § 1002 et seq.), pretrial motions to set aside the information or indictment *(id.,* § 995), and motions for judgment of acquittal *(id.,* § 1118.1), modification of verdict *(id.,* § 1181.1) or new trial *(ibid.).*

For all the foregoing reasons, we decline to follow the thesis of *People* v. *Van Hoek, supra,* 200 Cal.App.3d 811, and its progeny that generic

testimony deprives the defendant of a due process right to defend against the charges against him.

### b. *Right to Unanimous Jury*

As for the necessity of a unanimous jury on specific charges, we acknowledge that the requirement of unanimity in criminal cases is of constitutional origin. (See Cal. Const., art. I, § 16.) The standard unanimity instruction codifies that principle. (See CALJIC No. 4.71.5.) ■ But we reject the contention that jury unanimity is necessarily unattainable where testimony regarding repeated identical offenses is presented in child molestation cases. In such cases, although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described.

As previously stated, even generic testimony describes a repeated series of *specific*, though indistinguishable, acts of molestation. (*Ante,* pp. 313-314.) The unanimity instruction assists in focusing the jury's attention on each such act related by the victim and charged by the People. We see no constitutional impediment to allowing a jury, so instructed, to find a defendant guilty of more than one indistinguishable act, providing the three minimum prerequisites heretofore discussed are satisfied.

For example, if the victim testified that an act of oral copulation occurred once each month for the first three months of 1990, and the People charge three counts of molestation, the jury's unanimous conclusion that these three acts took place would satisfy the constitutional requirement of unanimity.

Similarly, if an information charged *two* counts of lewd conduct during a particular time period, the child victim testified that such conduct took place *three times* during that same period, and the jury believed that testimony in toto, its difficulty in differentiating between the various acts should not preclude a conviction of the two counts charged, so long as there is no possibility of jury disagreement regarding the defendant's commission of any of these acts. (See *People* v. *Moore, supra,* 211 Cal.App.3d at pp. 1414-1415; *People* v. *Moreno, supra,* 211 Cal.App.3d at pp. 789-790, & fn. 4; *People* v. *Winkle, supra,* 206 Cal.App.3d at p. 830; *People* v. *Schultz, supra,* 192 Cal.App.3d at pp. 539-540; *People* v. *Deletto, supra,* 147 Cal.App.3d at p. 466.)

■ In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. (See, e.g., *People* v. *Gordon, supra,* 165 Cal.App.3d at

pp. 855-856 [defendant raised separate defenses to the two offenses at issue].) But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim.

As pointed out recently in *People* v. *Moore, supra,* 211 Cal.App.3d at page 1414, because credibility is usually the "true issue" in these cases, "the jury either will believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict [citation] and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act [citations]."

■ To the extent inconsistent with our opinion, the cases of *People* v. *Vargas, supra,* 206 Cal.App.3d 831, *People* v. *Luna, supra,* 204 Cal.App.3d 726, *People* v. *Atkins, supra,* 203 Cal.App.3d 15, and *People* v. *Van Hoek, supra,* 200 Cal.App.3d 811, are hereby disapproved.

## IV. CONCLUSION

■ Applying the foregoing analysis to the present case, we conclude that the Court of Appeal improperly reversed defendant's conviction of counts 19, 20, 22 and 23 pertaining to victim Sammy. Sammy's testimony was substantial evidence of frequent (once or twice each month) molestations by defendant, at five separate locations, consisting exclusively of oral copulation. Moreover, Sammy's testimony supported the finding that these molestations occurred during the periods specified in these four counts of the information, and well within the limitation period. Sammy's inability to specify the exact time, place or circumstance of these assaults neither denied defendant due process nor rendered his testimony too insubstantial to support a conviction. As previously indicated, defendant had the benefit of an unqualified unanimity instruction.

As Justice Benke, dissenting to the Court of Appeal decision herein, observed: "Sammy testified . . . that the molestations took place once or twice each month starting approximately one month after he moved in with [defendant] in August of 1983. Sammy recalled no molestations took place in either March or April of 1984 . . . . [¶] [Defendant] offered no alibi defense. Sammy's testimony was certainly sufficient if believed to enable the jury to conclude he had been molested at least once during [each of the four

time periods in question]. That the jury was able to differentiate between the various time periods and places involving Sammy is evidenced by the court's giving of CALJIC No. 4.71.5 which required unanimity as to specific offenses and the jury thereafter finding [defendant] not guilty of count 21 which encompassed March and April of 1984." (See also *People* v. *Moreno, supra,* 211 Cal.App.3d at p. 793 [jury convicted defendant of 14 counts of molestation but acquitted him of 6, indicating an "ability to separate the acts and consciously evaluate appellant's guilt according to the requirements of the unanimity instruction"].)

The decision of the Court of Appeal is reversed with directions to affirm the judgment as to counts 19, 20, 22 and 23.

Panelli, J., Eagleson, J., Kennard, J., and Arabian, J., concurred.

MOSK, J.—I dissent. The majority advocate unqualified acceptance of "generic testimony"—unspecific as to time, place or circumstance—as sufficient to convict a defendant of committing particular criminal acts. But sole reliance on such testimony raises a number of grave due process concerns that the majority do not adequately address. Neither the majority opinion nor the line of recent Court of Appeal opinions it embraces—opinions that mostly reiterate each other's conclusions—succeeds in adequately safeguarding two of the most important rights constitutionally guaranteed to all persons charged with crime: the right to be free of conviction except upon the verdict of a unanimous jury and the right to present a defense. The majority opinion would also permit the prosecutor to charge and convict a defendant on numerous counts for unspecified criminal acts, with the number of counts left to the prosecutor's discretion.

In lieu of the majority's approach, I propose that to support each charge under Penal Code section 288 (hereafter section 288), the prosecution be required to prove the commission of *a specific criminal act.* The evidence would have to describe the act with sufficient particularity to allow reasonable jurors to *distinguish* the act from other acts and to agree unanimously that the defendant committed it. I would not require that the act be necessarily pinpointed in time, but I would require *some particularity* with regard to time, place or distinguishable circumstances before the jury would be allowed to pass on the defendant's guilt.

If, on the other hand, the evidence does not point to any distinguishing acts, the accused child molester would not be beyond prosecution. Instead, he could be prosecuted under recently enacted Penal Code section 288.5 (hereafter section 288.5), which makes criminal a specific course of conduct identified as "continuous sexual abuse of a child" As discussed below,

section 288.5 has built in it certain safeguards, not present in section 288, that balance the state's interest in prosecuting resident child molesters with the defendant's due process rights.

The majority's acceptance of generic testimony arises from its understandable concern with the unique evidentiary problems that arise in prosecutions of alleged resident child molesters, particularly when the complaining witnesses are young children who have difficulty recalling or articulating specifics. Nonetheless, it is hyperbole to suggest, as the majority opinion does (*ante*, p. 305), that refusal to accept generic testimony as sufficient to convict would result in the "immunization" of resident child molesters, even with regard to cases brought prior to section 288.5's enactment; the typical resident child molester case is premised on a mixture of both generic and nongeneric testimony, describing both specific, distinguishable acts and generalized accounts of molestation.[1] The standard I propose would merely circumscribe the prosecution's case against an accused resident child molester brought under section 288, so that prosecutors are compelled to plead and prove, and jurors are compelled to agree upon, the specific criminal acts of which the presumptively innocent defendant is guilty.

## I. *The Unanimous Verdict Requirement*

The California Constitution (art. I, § 16) requires unanimous verdicts in criminal cases. When a conviction is based entirely on generic testimony, however, unanimity becomes impossible: because no evidence of specific

---

[1] A review of recent decisions involving resident child molesters shows that in most there was specific testimony which identified the act according to time, place or various distinguishing circumstances. (See *People v. Van Hoek* (1988) 200 Cal.App.3d 811, 813 [246 Cal.Rptr. 352] [victim recalled three specific acts of molestation]; *People v. Vargas* (1988) 206 Cal.App.3d 831, 847 [253 Cal.Rptr. 894] [evidence of incidents with distinguishing characteristics presented on four of ten counts]; *People v. Atkins* (1988) 203 Cal.App.3d 15, 19 [249 Cal.Rptr. 863] [specific testimony on three of five counts]; *People v. Luna* (1988) 204 Cal.App.3d 726, 730-731 [250 Cal.Rptr. 878] [specific testimony at least three counts]; *People v. Sanchez* (1989) 208 Cal.App.3d 721, 746 [256 Cal.Rptr. 446] [specific testimony as to location and nature of acts]; *People v. Jeff* (1988) 204 Cal.App.3d 309, 342 [251 Cal.Rptr. 135] [specific testimony on at least two of nine counts]; *People v. Coulter* (1989) 209 Cal.App.3d 506, 509, 511 [257 Cal.Rptr. 391] [specific testimony as to time, place and circumstance]; *People v. Moore* (1989) 211 Cal.App.3d 1400, 1404-1405 [260 Cal.Rptr. 134] [specific testimony on place and circumstance as well as to some specific times]; *People v. Avina* (1989) 211 Cal.App.3d 48, 52 [259 Cal.Rptr. 178] [four events testified to in detail]; *People v. Moreno* (1989) 211 Cal.App.3d 776, 781 [259 Cal.Rptr. 800] [at least three incidents described specifically as to time, place and circumstance]; *People v. Obremski* (1989) 207 Cal.App.3d 1346, 1349 [255 Cal.Rptr. 715] [adult eyewitness to one act of molestation].) Of these cases only *People v. Winkle* (1988) 206 Cal.App.3d 822, 824-825 [253 Cal.Rptr. 726] seems to be without specific testimony of any kind, and this may be more an artifact of the appellate court's description than a true reflection of the state of the evidence. Moreover, *Winkle* contained extensive physical evidence as well as a confession by the defendant.

criminal acts has been presented, the jurors are by definition precluded from agreeing unanimously on which criminal acts the defendant committed. As stated in *People* v. *Van Hoek, supra*, 200 Cal.App.3d at page 817: "Implicit in the cases requiring specificity of charges and the charges being supported by specific testimony given at trial is the fundamental due process rule, steeped in antiquity, that the prosecution must prove a specific act and the twelve jurors must agree on one specific act." (Accord, *People* v. *Creighton* (1976) 57 Cal.App.3d 314, 320 [129 Cal.Rptr. 249], disapproved on other grounds in *People* v. *Thomas* (1978) 20 Cal.3d 457, 468 [143 Cal.Rptr. 215, 573 P.2d 433]).)

The majority purport to address this concern with their "modified unanimity instruction," which, "in addition to allowing a conviction if jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (Maj. opn., *ante*, p. 322.) To understand the complete inadequacy of this answer, some background discussion of the jury unanimity problem is in order.

A. *The Either/Or Rule and the Continuous-course-of-conduct Crime Exception*

Courts have long recognized that the achievement of true jury unanimity requires more than the mere agreement of 12 jurors to a common verdict. (See, e.g., *People* v. *Williams* (1901) 133 Cal. 165 [65 P. 323].) The concern that a seemingly unanimous jury verdict may mask substantial disagreements among the jurors was first raised in cases in which evidence of more than one criminal act was presented in support of a single criminal charge. For such situations the courts developed the "either/or" rule, which states that "when the accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, *either* the prosecution must select the specific act relied on to prove the charge *or* the jury must be instructed . . . that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act." (*People* v. *Gordon* (1985) 165 Cal.App.3d 839, 853, and cases cited [212 Cal.Rptr. 174].)

When a case relies on truly generic testimony, however, the either/or rule cannot apply, because such testimony does not present a set of distinguishable acts from which the prosecutor can elect or about which the jurors can agree. Recent Court of Appeal decisions differ as to the consequence of the inapplicability of the either/or rule to generic testimony cases. (Compare *People* v. *Van Hoek, supra*, 200 Cal.App.3d 811, 816 [unanimity instruction not an adequate remedy when acts are indistinguishable], with *People* v. *Winkle, supra*, 206 Cal.App.3d 822, 830 [jurors need not agree on specific

act, and unanimity instruction would only "confuse the jury"].) As will appear, I agree with *Van Hoek* that the failure of the either/or rule to remedy generic testimony is a reflection more of the inadequacy of that testimony than of the limitations of the either/or rule.

Nor does the "continuous crime" exception to the either/or rule apply here. Under that exception, jurors do not have to agree on specific acts in order to convict in the following two situations: (1) when the criminal acts are so closely connected in time as to be part of the same criminal transaction—e.g., repeated acts of rape in the same hour, or (2) when the criminal activity constitutes a "continuous course of conduct." (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 282 [182 Cal.Rptr. 354, 643 P.2d 971].) A continuous-course-of-conduct crime is generally one committed on the same victim and described in terms of cumulative injury to that victim.[2] Examples of a continuous course of criminal conduct include child abuse (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299]) and contributing to the delinquency of a minor (*People* v. *Lowell* (1946) 77 Cal.App.2d 341, 346-348 [175 P.2d 846]).

By contrast, lewd or lascivious conduct, as defined in Penal Code section 288, subdivision (a), criminalizes at present only *specific acts*. The statute is quite clear about this, making punishable "Any person who shall willfully and lewdly commit any lewd or lascivious *act* . . . ." (Italics added.)[3] The problem that the present case poses is not whether generic testimony is acceptable in some abstract sense, but whether such testimony can form the basis of a conviction under a statute that requires proof of *particular* criminal acts.

## B.  *Generic Testimony and the Jury Unanimity Problem*

The majority opinion nonetheless maintains that such use of generic testimony is constitutionally permissible. The majority claim that because "credibility is usually the 'true issue' in these cases, 'the jury either will

---

[2] For example, Penal Code section 273a, subdivision (1), which defines the crime of child abuse, makes punishable: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care and custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, . . ."

[3] Penal Code section 288, subdivision (a), reads in full: "Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years."

believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict [citation] and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act [citations].' " (Maj. opn., *ante,* p. 322), quoting from *People* v. *Moore* (1989) 211 Cal.App.3d 1400, 1414 [260 Cal.Rptr. 134].)

This argument ignores, however, a primary reason for requiring a high level of agreement among jurors. The rule that jurors must agree on specific criminal acts in order to convict has been established not simply to preclude the possibility that jurors presented with multiple acts in support of a single criminal charge might actually disagree. The unanimity requirement serves an additional purpose: as Judge Wisdom wrote in *United States* v. *Gipson* (5th Cir. 1977) 553 F.2d 453, like the reasonable doubt standard it is needed to impress " 'on the trier of fact the necessity of reaching a subjective state of certitude on the facts at issue.' " (*Id.* at p. 457.) To make the unanimity rule an effective means of securing such certitude, the rule "requires jurors to be in substantial agreement as to *just what a defendant did* as a step preliminary to determining whether the defendant is guilty of the crime charged." (*Id.* at pp. 457-458, italics added.)

The danger, therefore, of relying on wholly generic testimony to convict a defendant of specific criminal acts is that jurors would no longer need to achieve the state of subjective certitude they reach when they are compelled to agree on the specific criminal acts committed by the defendant; instead, they would need only to agree that the defendant committed some lewd or lascivious act, somewhere, at some time. Testimony pitched at such a low level of specificity may be sufficient to convict of a crime defined by a continuous course of conduct, e.g., section 288.5, it does not suffice when the crime consists, as here, solely of the commission of specific criminal acts.

Thus, the difficulty with the majority's approach is its implied suggestion that acts can be *specific,* for purposes of conviction under section 288, without being *distinguishable.* This approach allows jurors to convict the defendant of "phantom" acts which lie below the threshold of particularity that is the precondition of jury unanimity in any meaningful sense. But indistinguishable acts cannot serve as the tangible core around which 12 minds dedicated to finding specific-act guilt beyond a reasonable doubt can form agreement.

For this reason, the majority's solution to the generic testimony problem—the modified unanimity instruction—is untenable. If jurors are unable

to agree that the defendant committed any single act, they cannot be expected to agree that the defendant committed "all" the acts. If jurors are presented with generic acts A, B, C, and D, and cannot agree unanimously that the defendant committed act A, or act D, how can they agree that he committed all four acts? The subjective certitude that jurors lack in deciding whether defendant committed a single act does not magically appear when jurors are considering the totality of his acts. In other words, the modified unanimity instruction does not address the fundamental requirement that juror agreement on a specific act stand behind every count charged under section 288.

Moreover, assuming arguendo that a modified unanimity instruction is accepted as a valid means of curing the defects in generic testimony, it was not given in this case, and therefore defendant's convictions based on generic testimony cannot be upheld. Nor can his omission be judged to be harmless. It is evident that the jury did not believe that defendant committed all the acts with which he was charged, since they acquitted him on five counts. It is impossible to predict how the jury would have reacted had they been given the majority's modified unanimity instruction. Therefore, failure to administer the modified unanimity instruction, by the majority's own logic, must lead to reversal of the generic-testimony-based convictions.

The majority's view also ignores the problem of all-or-nothing convictions. When a defendant is charged with a number of similar crimes against the same victim, jurors are likely to believe he is either largely guilty or else innocent. This unstated presumption, however, runs counter to one of our most fundamental notions of due process: a defendant must be convicted independently and beyond a reasonable doubt of *each* charge. Thus, the prosecutor may attempt to "piggyback" the charges based purely on generic testimony, about which the jury has been given little information, on those charges supported by more specific testimony, about which the jury has been told a good deal more. The result will be a further compromising of the reasonable doubt standard.

C. *Section 288 in Relation to Section 288.5*

What is perhaps most perplexing about the majority's effort to lower due process standards under section 288 is that it ignores the Legislature's own solution to the problem of prosecuting resident child molestation. Section 288.5, enacted in 1989, punishes "any person who either resides in the same house with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial conduct with a child under the age of 14 . . . ." (§ 288.5, subd. (a).) Jurors "need unanimously agree only that the requisite

number of acts occurred[,] not on which acts constitute the requisite number." (*Id.*, subd. (b).)

As the bill that introduced section 288.5 makes clear, the new statute was intended "to overcome the due process problems raised in the *Van Hoek* case within the framework of existing statutory law." (Assem. Bill No. 2212 (1989-1990 Reg. Sess.) § 1.) The Legislature has chosen to address the substantial constitutional problems raised by *Van Hoek* and its progeny by creating a continuous-course-of-conduct crime—the crime of resident child molestation. As discussed above, a continuous-course-of-conduct crime is a well recognized exception to the rule that the jurors must agree on the particular criminal acts committed by the defendant before convicting him. The continuous-course-of-conduct crime does not require jury unanimity on a specific act, because it is not the specific act that is criminalized. The *actus reus* of such a crime is a *series* of acts occurring over a substantial period of time, generally on the same victim and generally resulting in cumulative injury. The agreement required for conviction is directed at the appropriate *actus reus*: unanimous assent that the defendant engaged in the criminal course of conduct.

The difference between the majority's solution to the resident child molester problem and that of the Legislature is far more than semantic. The Legislature, in enacting section 288.5, created several safeguards designed to balance the state's compelling interest in prosecuting the resident child molester with the protection of a criminal defendant's rights. Primary among these safeguards is the limitation that the defendant be charged with only one count per victim. Although penalties for violation of section 288.5 are severe—with possible 6, 12, or 16 year sentences—the one-count-per-victim provision is a significant restriction on overzealous prosecutors, who may be tempted to compile a multitude of convictions based on potentially exaggerated estimates of the frequency of the criminal conduct by victims concededly unable to recall specifics.

Section 288.5 would also require that jurors agree the defendant committed *at least three acts* of sexual abuse before convicting him on a given count. The three-act requirement thus sets a baseline for the crime of continuing sexual abuse, making clear that a defendant may not be convicted of that crime without substantial evidence that he engaged in a repetitive pattern of abusive acts.

Finally, section 288.5 requires that the defendant have had three months' continuous access to the victim. The continuous-access requirement makes clear that the statute was targeted at the resident child abuse situation, where problems with generic testimony are most likely to arise, and was not

to be used against individuals who have only transient contact with the alleged victim.

Section 288 and 288.5, read in conjunction, are thus two aspects of a single legislative scheme. When a prosecutor has strong evidence of specific acts of child molestation, he may bring his case under section 288, with its more demanding proof requirements. When the prosecutor has strong evidence that the defendant committed some type of lewd and lascivious acts on a child, but has only the child's generic testimony, he may bring the case under section 288.5 as a course-of-conduct crime, with relaxed proof requirements but with the built-in safeguards discussed above.

The majority would play havoc with this legislative scheme. Under their construction of section 288, the prosecutor has all of the incentives and none of the disincentives to bring a resident child molestation case under this section rather than section 288.5. He may prove his case against the defendant with generic testimony, and his discretion is virtually unfettered as to how many counts he can charge. He may use generic testimony under section 288 even when the contact between the defendant and the alleged victim has been brief, and the potential for pinpointing the time and place of the acts presumably greater. The majority's holding today therefore severely undermines the thoughtful balancing and limitations incorporated in section 288.5, and deviates from our usual policy of deference to the Legislature in matters relating to the creation and definition of crimes.

## II. *Right to Present a Defense*

The majority also belittle the grave difficulties of defending against generic testimony. First, they dismiss the accused's inability to establish an alibi: "only infrequently can an alibi or identity defense be raised in the resident child molester cases. Usually, the trial centers on a basic credibility issue—the victim testifies to a long series of molestations and the defendant denies that any wrongful touchings occurred." (Maj. opn., *ante,* at p. 319.) The majority stress the competence and credibility of child witnesses in general. Finally, the majority contend the defendant does have an opportunity to present a defense—chiefly, it appears, by calling attention to the "nonspecificity" of the child's testimony by presenting expert character evidence on his own behalf, and by impeachment of the child witness via revelation of past fabrications.

But the problems of defending against purely generic testimony are far more serious than the majority would have us believe. The defendant faces

great obstacles in presenting not only an alibi defense, but a credibility defense as well. As the *Van Hoek* court explains, "The defendant is unable to attack specifics of the act to undermine the victim's credibility as to certain details which might convince the jury that the particular act did not occur. . . ." (*People* v. *Van Hoek, supra,* 200 Cal.App.3d at p. 817.)

It is true there is no right to an alibi defense per se: a burglary can be prosecuted although the precise date of its commission is unknown. (See, e.g., *People* v. *Avina* (1989) 211 Cal.App.3d 48, 56 [259 Cal.Rptr. 178].) But in the case of a burglary there is likely to be tangible physical evidence—e.g., the stolen goods—that gives a defendant the opportunity to mount a viable defense. He may present, for example, an alternative explanation for his possession of the stolen goods.

The person faced with generic testimony, however, can make only the most generalized attack on his accuser's credibility. Unable to cross-examine the child as to the details of the molestation, he can never show, for example, that these details render the child's story physically impossible, or highly unlikely, or contradictory. The trial stratagems recommended by the majority are of dubious value: whereas a lack of specificity in an adult witness would likely raise questions about his credibility, a child witness's vagueness may well be seen by the jury as reflecting simply a lack of cognitive or expressive development. And generalized character testimony may be given little weight by a jury impressed by an earnest child victim/witness.[4]

Contrary to the majority's assertions, moreover, the general credibility or competency of children as witnesses is not the issue: the point is not that children lie, or lie frequently, but that they *may* lie, and should therefore be held to approximately the same standards as adults. (See Meyers, *The Child Witness: Techniques for Direct Examination, Cross-Examination, and Impeachment* (1986) 18 Pacific L.J. 801, 872, 873 [children over eight are cognitively capable of "bending the truth," and younger children, although not likely to consciously lie in court, may be prone to suggestion].) In short, the presumptively innocent defendant faced with purely generic testimony confronts problems of such magnitude as to impair his Sixth Amendment right to present a defense. The standard I propose—that the defendant can

---

[4] It is true that some of the same problems are present when defendant is tried under a continuous-course-of-conduct charge. But in such situations the defendant is not asked to defend against charges of tens or hundreds of indistinguishable criminal acts, but against a single charge that he engaged in a particular course of criminal conduct. Thus, he does not find himself in the Kafkaesque predicament of having to answer to numerous charges of unspecified criminal misdeeds.

be convicted under section 288 only of particular acts supported by testimony that describes those acts in sufficient detail to make them distinguishable—will provide him with a somewhat better opportunity to challenge the child victim/witness's credibility.[5]

### III. *Sufficiency of the Evidence*

"The proper test to determine a claim of insufficient evidence in a criminal case is whether, on the entire record, a rational trier of fact could find appellant guilty beyond a reasonable doubt." (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) As explained above, true jury unanimity is impossible when generic evidence is the sole basis of a conviction for committing specific criminal acts. But to say as a matter of law that 12 jurors could not achieve agreement beyond a reasonable doubt on the evidence presented is tantamount to declaring the evidence insufficient. Lack of jury unanimity plainly violates due process; likewise evidence that does not allow jury unanimity is insufficient.

The majority opinion, in addition to its lengthy though largely irrelevant discussion of the child/witness's credibility, argues that generic testimony is not insufficient because "[a]s many of the cases make clear, the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction." (Maj. opn., *ante*, at p. 315.) But this formulation misconstrues the dilemma of generic testimony. The need to prove that specific acts of lewd or lascivious conduct were committed is axiomatic, arising from the statute itself; the only question is whether the courts should accept nonspecific testimony to prove these acts. As explained above, such proof is insufficient as a matter of law because jurors are unable to achieve true unanimity to convict a defendant of specific criminal acts.

### IV. *Arbitrariness in Charging and Sentencing*

Finally, the majority scarcely mention the significant problems of charging and sentencing that will inevitably arise if its standard is adopted. In the

---

[5] The majority opinion also discusses the problem of insufficient notice, addressing it in terms of the availability or lack of adequate pretrial procedures—e.g., the preliminary hearing—that can inform the defendant of the nature of the charges brought against him. I view the problem of notice as indistinguishable from the general problem of presenting a defense. Pretrial proceedings, through whatever means, must provide notice of the particular criminal acts with which the defendant is charged, so as to enable him to prepare a defense. (See *In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5] [notice must be sufficient to allow accused to prepare a defense].) The availability of additional pretrial procedures cannot cure the problem of notice if the end product of those procedures is the victim's insufficiently specific allegations.

present case counts 19 to 23 alleged acts committed between November 1, 1983, and August 30, 1984, with March and April of 1984 omitted. But the division of the charged offenses into two-month periods so as to amount to five counts against defendant was purely arbitrary; the prosecutor could have divided the period into ten counts, or two, according to his whim. Because the number of charges on which a defendant is convicted will strongly influence the length of his sentence, the majority's approach creates a serious risk of arbitrary and disproportionate sentencing. Anchoring each criminal count in a specific, distinguishable criminal act, as I propose, would avoid such abuses of unfettered prosecutorial discretion.

The majority's only response to this dilemma is to admonish prosecutors, parenthetically, to "exercise discretion in limiting the number of separate counts charged." (Maj. opn., *ante*, at p. 314.) The exhortation neither provides prosecutors with any guidelines as to what a reasonable exercise of discretion would be, nor establishes any standard for abuse of discretion that would be reviewable by an appellate court. While most prosecutors will doubtless exercise restraint, the few who do not, for whatever mixture of self-seeking and misguidedly altruistic motives, will be undeterred by the majority's admonition.

## V. *Application to the Present Case*

Here the prosecution's evidence on counts 19 to 23 consisted almost exclusively of generic testimony of several acts of oral copulation, undifferentiated as to time, place or circumstance. There is, in fact, no indication in the record that Sammy, who was between the ages of 10 and 12 when the molestations occurred, was incapable of remembering specific incidents. Rather, the prosecutor seems to have abandoned any inquiry about specifics in favor of questions designed to elicit broad, general responses, thereby maximizing the number of convictions against defendant with the least prosecutorial effort. On such testimony, it is difficult to say to what exactly the jury thought it was agreeing.

For the reasons given, the prosecution seeking a conviction under section 288 should be required to present evidence of specific criminal acts, particular as to distinguishing time, place or circumstances. Applying this standard, I would conclude that convictions on counts 19 to 23 relied exclusively on generic testimony, and lacked evidence of specific, distinguishable

acts. I would therefore affirm the Court of Appeal's judgment reversing the conviction on those counts.

Broussard, J., concurred.