Filed 6/16/14  In re Joseph G. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re JOSEPH G., a Person Coming Under the Juvenile Court Law. | H039235<br>(Santa Clara County<br>Super. Ct. No. JV37942) |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH G.,<br><br>      Defendant and Appellant. | |

The juvenile court found that appellant Joseph G. had committed two counts of forcible lewd conduct on a child under 14 (Pen. Code, § 288, subd. (b)(1)) on separate victims and that he had been aware of the wrongfulness of his conduct.  The court declared Joseph a ward and placed him on probation.  On appeal, Joseph claims that the court's finding that he committed the two counts of lewd conduct is not supported by substantial evidence.  He also claims that the court's finding that he knew of the wrongfulness of his conduct is infirm because the court used a clear and convincing evidence standard of proof rather than a beyond-a-reasonable-doubt standard of proof. We reject both of his contentions and affirm the juvenile court's order.

## I.  Sufficiency of the Evidence

Joseph contends that the evidence presented at the jurisdictional hearing does not support the juvenile court's finding that he committed the two counts of lewd conduct. The juvenile court expressly found the testimony of the two victims, whom we will refer to as "Eric" and "Alan" to protect their privacy, to be "credible" and stated "I absolutely believe this happened." Joseph claims on appeal that the testimony of Alan and Eric was not credible. While he acknowledges that we view the evidence in the light most favorable to the court's findings (*In re Roderick P.* (1972) 7 Cal.3d 801, 808-809) and cites no cases reversing a factfinder's credibility determination, he insists that this case is one in which the factfinder's finding cannot be upheld. We disagree.

"Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless *it is the exclusive province of the trial judge or jury to determine the credibility of a witness* and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." (*People v. Jones* (1990) 51 Cal.3d 294, 314, italics added.) Yet Joseph urges us to reject the juvenile court's determination that the victims were credible and instead determine that they were not credible. We have no power to do so.

Eric and Alan testified at the jurisdictional hearing, and their testimony plainly provided the requisite evidence that Joseph had committed forcible lewd conduct on them. They testified that, when they were young children in elementary school, they both went to Joseph's mother Isabel's home for afternoon childcare. Both Alan and Eric testified that, during the period when they were going to Isabel's home for childcare, they were molested by Joseph in his upstairs bedroom on multiple occasions. The molestations consisted primarily of Joseph making the boys orally copulate him and Joseph orally copulating them. Joseph told the boys that he would beat them up if they

did not submit or if they told anyone about the molestations, and the boys were afraid of Joseph because Joseph "took karate."

Neither Alan nor Eric told anyone about the molestations for at least four years after they stopped going to Isabel's home for daycare. When Alan was in eighth grade, he began having nightmares and told his father that he was worried about Eric. When his father asked why, Alan told his father that Eric had been molested when they were in daycare. Alan's father told Alan's mother about this disclosure, and she immediately contacted Eric's parents. Alan's mother also immediately contacted the police and spoke to Eric, who disclosed that both he and Alan had been molested. Alan confirmed as much.

The testimony of Alan and Eric established the essential elements of lewd conduct. "[S]ection 288 [(lewd conduct)] is violated by 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*People v. Martinez* (1995) 11 Cal.4th 434, 452.) A violation of Penal Code section 288, subdivision (b)(1), which is what was alleged here, occurs when the lewd conduct is committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (Pen. Code, § 288, subd. (b)(1).) It was undisputed that Alan and Eric were well under the age of 14 when the molestations occurred. Joseph accomplished the molestations by threats and fear. The acts of oral copulation were plainly sexually motivated; no other motivation can be imagined under the circumstances. Joseph does not claim otherwise.

Despite the fact that the testimony of Alan and Eric supported each of the requisite elements of the offenses, Joseph contends that the juvenile court's findings cannot stand because no reasonable factfinder could credit that testimony due to the inconsistencies

3

between Alan's testimony and Eric's testimony, between their testimony and their prior statements, and between their accounts and other evidence.[1]

"To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends."[2] (*People v. Huston* (1943) 21 Cal.2d 690, 693, disapproved on different point in *People v. Burton* (1961) 55 Cal.2d 328, 352; accord *People v. Maury* (2003) 30 Cal.4th 342, 403.)

The offenses described by Alan and Eric were not physically impossible, and their accounts of the molestations did not appear on their face to be false. It is true, as defendant points out, that there were many inconsistencies and conflicts in the evidence. Alan testified that the molestations occurred when he and Eric were in fourth grade or in 2004 (when they were in first and second grades); Eric testified that the molestations occurred when they were in second or third grade. The defense presented evidence that

---

[1] The defense also presented two expert witnesses. Dr. James Missett, a forensic psychiatrist, testified that the manner in which the allegations came to be made were suggestive and indicated that the allegations were unreliable. He also testified that the inconsistencies in the accounts made them unreliable. Dr. Ashley Cohen, a forensic neuropsychologist, testified that she had administered tests to Joseph. The test results indicated that Joseph was not psychopathic, did not have an anti-social personality disorder, and was not prone to sexual offenses or other criminal behavior.

[2] Joseph argues that this rule applies only where there is a single witness and does not apply where there are two witnesses. We disagree. The fact that there were two witnesses to an event and both of them testify concerning it enhances, rather than detracts from, the reliability of their accounts. The rule regarding inconsistencies and conflicts applies regardless of the number of witnesses.

4

Eric and Alan were only at Isabel's home for daycare together during first grade and the first month of second grade, from May 2003 to September 2004.

Alan testified that there were four or five molestations; Eric testified that there were as many as 10 or more molestations. In prior statements, Alan had said there were three or four molestations, and Eric had said that there were five or more molestations. Both boys were vague and inconsistent about how much time elapsed during the molestations, with their estimates ranging from five minutes to an hour. Alan testified that Joseph molested him first, then Eric; Eric said the opposite. Alan and Eric were inconsistent about how, if, and by whom certain articles of clothing were removed prior to the molestations. Alan testified that Joseph was lying on a bed when he molested Alan; Eric testified that Joseph was standing up when he molested both boys. Alan testified that they never played video games in Joseph's bedroom; Eric testified that they played video games in Joseph's bedroom prior to the molestations. Defense witnesses testified that there was no video game player in Joseph's room. Alan testified that no other children were present; Eric testified that one or two other boys were present during some of the molestations, and one of them was also molested. That boy testified that he was not molested.

Alan testified that he went upstairs with Joseph despite knowing that it was against Isabel's rules, and he insisted that no adults were in the house when the molestations occurred. Both Alan and Eric testified that Isabel was out of the house picking up other children when the molestations occurred. However, in one prior statement, Eric said that Isabel had been downstairs during these events. Alan's mother testified that Isabel would often leave the older children in the house without adult supervision while she left the house for an hour to pick up the younger children. Eric's mother testified that she had noticed a couple of times that no adult was present when she picked up Eric from Isabel's home. Defense witnesses testified that Eric and Alan were not allowed upstairs, never went upstairs with Joseph, would have been unable to go upstairs because there was a

5

gate blocking access to the stairs, and were never left in the house without adult supervision. Isabel testified that there were alarms on all of the upstairs bedroom doors that would have alerted her to anyone going into Joseph's bedroom without permission. Joseph testified that he had never gone upstairs with Eric and Alan. He denied that Alan had ever been in his bedroom.

None of these inconsistencies and conflicts in the evidence or any others precluded the juvenile court from crediting the testimony of Eric and Alan.[3] At least four years had elapsed between the offenses and the initial disclosure, and more than two additional years passed before the boys testified at the jurisdictional hearing. By that point, the boys were teenagers in high school attempting to recall events that occurred when they were little children in the early years of elementary school. It is not at all surprising under these circumstances that their recall was poor when they testified or that their prior statements were inconsistent. Eric admitted that he did not remember a lot of the details of the molestations. The fact that the two accounts were alike as to the critical elements of the offenses and the basic circumstances under which they occurred enhanced their reliability, particularly since the two boys had not seen each other but once during the two years prior to the disclosures, and that visit was a year before the disclosures. No reason for believing that the boys would both fabricate such similar allegations was ever established. We conclude that substantial evidence supports the juvenile court's findings.

## II. Standard of Proof of Knowledge of Wrongfulness

"All persons are capable of committing crimes except those belonging to the following classes: [¶] One—Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness."

---

[3] We do not purport to list all of the inconsistencies and conflicts, but merely note the most significant ones.

6

(Pen. Code, § 26.) Joseph was three years older than Eric and Alan. Hence, he was necessarily under the age of 14 when the offenses occurred. Joseph testified at trial that he had been taught from the time he was a "baby" that it was "not okay" to touch someone else's private parts. The prosecutor argued that she had proved by clear and convincing evidence that Joseph was aware of the wrongfulness of his conduct. The juvenile court expressly found that Joseph "knew of the wrongfulness of the act that was shown by the threats to keep the nature of the act quiet as well as the location in an area where it was not going to be noticed or viewed by other persons who were in the household."

Joseph's appellate contention is that the juvenile court's finding is invalid because the court used a clear and convincing evidence standard rather than a beyond-a-reasonable-doubt standard. He acknowledges that the California Supreme Court held in *In re Manuel L.* (1994) 7 Cal.4th 229 (*Manuel L.*) that the clear and convincing evidence standard is the appropriate standard of proof for knowledge of wrongfulness, but Joseph maintains that the reasoning of *Manuel L.* is no longer valid. In *Manuel L.*, the California Supreme Court distinguished the nature of this requirement from the elements of a criminal offense. "The issue of the juvenile's capacity remains, as historically it has been, subject to a distinct standard of proof. Penal Code section 26, subdivision One, continues to define the prosecution's burden of proving the juvenile's capacity in [Welfare and Institutions Code] section 602 proceedings. Section 701 establishes its burden with respect to all elements of the offense necessary to a finding that the minor violated any law defining a crime." (*Manuel L.*, at p. 236.) The court reasoned that "criminal capacity is not an element of the offense and thus is not the type of fact [that] requires proof beyond a reasonable doubt. Rather, it is akin to the question of sanity, which due process does not require the prosecution to prove beyond a reasonable doubt." (*Manuel L.*, at p. 238.)

Joseph concedes that we would ordinarily be bound to follow the holding in *Manuel L.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), but he contends that *Manuel L.* is no longer valid in light of the United States Supreme Court's decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*). In *Apprendi*, the United States Supreme Court held that a fact (other than a prior conviction) that increases the maximum penalty for an offense must be proved to a jury beyond a reasonable doubt, but the court explicitly did not consider "the State's power to manipulate the prosecutor's burden of proof by, for example, relying on a presumption rather than evidence to establish an element of an offense, [citations], or by placing the affirmative defense label on 'at least some elements' of traditional crimes." (*Apprendi*, at p. 475.)

A juvenile's capacity to commit a criminal offense is not an element of a criminal offense, nor is it a sentencing factor that increases the maximum penalty for an offense. As the California Supreme Court explained in *Manuel L.*, a juvenile's capacity to commit a criminal offense (Pen. Code, § 26, subd. One) is akin to an adult's sanity (Pen. Code, § 26, subd. Two). In *People v. Ferris* (2005) 130 Cal.App.4th 773 (*Ferris*), the defendant claimed that *Apprendi* applied to the issue of sanity and required the prosecution to prove sanity beyond a reasonable doubt. In *Ferris*, the jury had been instructed that the defendant had the burden of proving by a preponderance that he was insane. (*Ferris*, at p. 777.) The Fifth District Court of Appeal rejected the defendant's attempt to characterize sanity as an element of the offense for *Apprendi* purposes. (*Ferris*, at p. 780.)

Sanity, like a juvenile's capacity to commit a criminal offense, concerns the individual's ability to understand the wrongfulness of the criminal act at the time of its commission. (*Ferris*, *supra*, 130 Cal.App.4th at p. 780; Pen. Code, § 26.) Since the issue of sanity is not an element of the offense for *Apprendi* purposes, it follows that a juvenile's capacity is not an element of the offense for *Apprendi* purposes. Therefore, *Apprendi* does not require that capacity be proved beyond a reasonable doubt. Thus, we

8

remain bound by *Manuel L.* (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455)  The juvenile court applied the correct standard of proof.

### III.  Disposition

The juvenile court's order is affirmed.

_____

Mihara, J.

WE CONCUR:


_____

Bamattre-Manoukian, Acting P. J.



_____

Grover, J.




In re Joseph G.
H039235