Filed 11/30/23  P. v. Berry CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RONALD CRAIG BERRY,<br><br>    Defendant and Appellant. | A165932<br><br><br>(Del Norte County<br>Super. Ct. No. CRF22-9035) |

A jury convicted Ronald Craig Berry of possessing a firearm as a felon. (Pen. Code, § 29800, subd. (a)(1); undesignated statutory citations are to this code.)  On appeal, he claims his conviction must be reversed for two reasons: The prosecutor failed to prove beyond a reasonable doubt that he did not act in reasonable self-defense, and section 29800 violates the Second Amendment to the federal Constitution as construed in *New York State Rifle & Pistol Association v. Bruen* (2022) 597 U.S. ___ [142 S.Ct. 2111] (*Bruen*).  We reject both contentions and affirm.

**BACKGROUND**

The incident resulting in Berry's conviction arose from a romantic triangle involving him, Heather B., and Patrick D.  Berry, a felon, had a young child with Heather.  She had been letting Berry stay with her in the house of her recently deceased mother even though there was, in her view, no longer any "love between us," and even though Berry had often abused her.

1

As for Patrick, Heather had an "off and on" romantic relationship with him. Berry was angrily jealous and had threatened to kill Patrick many times; the two men hated each other.

On an afternoon in September 2021, Heather gave Patrick a ride. After learning they were together, Berry found them and ran Heather's vehicle off the road. He and Patrick exchanged heated words, and Patrick challenged Berry to fight, but the encounter ended without physical violence.

A few hours later, Heather returned home, where she found Berry with her neighbors and friends, Lonnie H. and his wife (collectively, neighbors). After Berry assured Heather and the neighbors that it would "be okay," and that he was "not that mad," the neighbors left to go shopping. Heather and Berry calmly spent an hour in the house, and she put their child to bed.

The calm ended when Patrick arrived at the house in his pickup truck.[1] Heather went outside and asked him to leave. He refused. Berry then came outside with a shotgun that had belonged to Heather's mother. He fired at least one shot at Patrick. Then Patrick rammed his truck into the house's front porch and fled on foot. Heather, after videorecording part of the incident on her phone, drove away with her child and called 911.

As the incident began, the neighbors were on their way home from the store. Nearing Heather's house, they saw Patrick's truck in her driveway and pulled over. Soon thereafter, Lonnie called 911. In a recording of his call played for the jury, he told the dispatcher he had "seen two guys just about to

---

[1] At trial, the jury heard conflicting accounts of exactly how the ensuing confrontation unfolded. "In light of the sufficiency of the evidence contentions that follow, we set forth the facts here in the light most favorable to the judgment." (*People v. Lee* (2011) 51 Cal.4th 620, 625, fn. 5.)

kill each other" in Heather's front yard. He added, "they both have guns." When the dispatcher asked, "They both have guns? Did you see that?" Lonnie said, "I did see—I saw one." The dispatcher then put Lonnie on hold because she was getting another call.

The call was from Heather. In a recording of her 911 call played for the jury, she said Berry "just shot at my boyfriend with a shotgun and he's in my house right now and my boyfriend just tried to drive his truck into my house." She then clarified that Patrick "was trying to run into . . . [Berry] because he was shooting at him." She thought she had it "all on video." She added that Berry had tried "to run [her] off the road" earlier that day.

That night, a deputy videorecorded an interview of Heather.[2] In the recording, which was played for the jury, Heather described the relationships among Berry, Patrick, and herself, adding that Berry had run her and Patrick off the road that day. That evening, she said, Patrick pulled up in the driveway; she went out to tell him to leave; and he refused. Berry "flip[ped] out" and "came out with a shotgun and told him to leave." Heather said she went inside to get her child. She tried to go back out the front door, but Berry "shot the shotgun off" at Patrick.

Heather confirmed she saw Berry shoot at Patrick: Berry had been "almost still in the house" and Patrick had been in his truck, she said, adding, "He didn't get out of the truck at all." Heather said she then went out the back door and got in her mother's truck. Patrick then drove his truck into the front porch. Heather emphasized that Patrick "ran the truck after"

---

[2] The video Heather took on her phone during the incident was played for the jury. As it began, she was in the house and Berry stood in the open front doorway holding a rifle and shouting expletives. Heather tried to go out the front door, but Berry prevented her. Patrick could be heard calling, "Heather, get out here now," and "come on." She went out the back door. After she got in her mother's truck, a shotgun blast could be heard.

Berry because Patrick did not "have a gun or anything to protect himself." The deputy asked, "So the truck's run into the house . . . [¶] . . . as a defense from [Berry] shooting him?" and Heather replied, "Yes. Because [Berry] shot at him first."

Law enforcement officers found a single, spent shotgun shell on the front porch. Heather found her mother's shotgun in bushes by the house.

Berry was eventually arrested, jailed, and charged with one count of possessing a firearm as a felon. (§ 29800, subd. (a)(1) (§ 29800(a)(1)).) From jail, he had a recorded phone conversation with Heather. In the call, which was played for the jury, he admitted, "I possessed the fucking gun. I fired a shot at the fucking dude, so . . . I'm guilty." He also said he and his lawyer were working "on a self-defense" claim. He told Heather to tell Patrick, "no matter what happens he cannot be arrested for anything. He needs to understand that." He added, "Let's say . . . that the neighbors say I saw him with a fucking pistol[,] he cannot be charged with a crime." Heather indicated she understood, and later told Berry she loved him.

At trial, Heather's testimony differed from her recorded accounts on the night of the incident. Her testimony was more favorable to Berry, and when asked about specific misconduct she had ascribed to him—such as running her off the road—she often denied recalling it. As for the confrontation with the shotgun, she depicted Patrick as the aggressor. After she told him to leave, she testified Berry "might have come out, and . . . yelled a little bit at Patrick," who then "proceeded to come towards [Berry] in his truck." When Patrick did so, she did not think Berry was holding the shotgun. She also testified, contrary to her prior account, that she thought Patrick had opened his truck's door. Although she acknowledged she "didn't see" a gun in his hand, she testified she was now "pretty sure" he had one. Asked how she

4

knew that, Heather replied, "[a]fter watching the video." She did not explain her answer or identify a part of the video showing Patrick.

Lonnie testified for the defense, describing the circumstances of his 911 call. Before making the call, he "caught a glimpse" of Berry walking out the front door and saw Patrick "get out of his truck with what looked like a gun in his hand." In the 911 call, as quoted above, Lonnie first said both men had guns but then said, "I saw one." At trial, he confirmed he saw only one gun, and testified it was "[t]he one [Patrick] had." He denied seeing Berry with a shotgun but admitted hearing a shot that sounded like a shotgun. At that point, he turned to his wife to say it was time "to get out of there." As they pulled away, he heard two "smaller caliber" shots, then another shotgun blast. Finally, Lonnie acknowledged Berry was a friend, but claimed he would not lie for anyone in court.

The trial court instructed the jury the prosecution had "the burden of proving beyond a reasonable doubt that [Berry] did not temporarily possess a firearm in self-defense." The court gave CALCRIM No. 2514, which stated that Berry's possession of a firearm was not unlawful if he reasonably believed he faced an imminent danger of great bodily injury and reasonably believed he could avoid the danger only by an immediate use of force; if a firearm became available to him without planning or preparation on his part; if no other means of avoiding the danger was available; and if he possessed the firearm no longer than reasonably appeared necessary for self-defense, and used it reasonably under the circumstances.

In his closing statement, defense counsel did not dispute that Berry had possessed a firearm as a felon; he relied solely on a theory of reasonable self-defense. The jury found Berry guilty of possessing a firearm as a felon and the court sentenced him to six years in prison.

5

## DISCUSSION

## I.

### *Sufficient Evidence Supports the Conviction.*

Berry's first argument is that the prosecution did not offer sufficient evidence to enable the jury to find, beyond a reasonable doubt, that he did not act in reasonable self-defense. To determine if sufficient evidence supports the verdict, we "review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) For that purpose, the testimony of a single witness can suffice, so long as that testimony is not physically impossible or inherently improbable. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Resolving conflicts and inconsistencies in the testimony is the jury's "exclusive province." (*Ibid.*) We neither reweigh the evidence nor reevaluate the credibility of witnesses; if the circumstances reasonably justify the jury's findings, we may not reverse simply because they "might also reasonably be reconciled with a contrary finding." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Although the text of section 29800(a)(1) unqualifiedly bars felons from possessing firearms, the California Supreme Court has held that they are nonetheless entitled to do so temporarily as necessary to defend themselves from an immediate risk of great bodily injury. (*People v. King* (1978) 22 Cal.3d 12, 20, 24.) As summarized above, CALCRIM No. 2514 lists six elements of such reasonable self-defense. All six must be present to make a felon's temporary possession of a firearm lawful. (*Ibid.*) Under that instruction, a jury can thus find a defendant guilty if it finds beyond a

6

reasonable doubt that any one of the elements was absent. (See, e.g., *People v. Brown* (2003) 31 Cal.4th 518, 557.) To conclude that sufficient evidence enabled the jury to make such a finding, we need consider only the first element: whether Berry reasonably believed he was in "imminent danger of suffering great bodily injury" when he took possession of the shotgun. (*Ibid.*)

To find that element disproven, the jury could have credited Heather's contemporaneous accounts, given in her 911 call and her recorded interview, that Patrick had no gun and tried to hit Berry with his truck only *after* Berry came out with a shotgun and fired at him. In her testimony, Heather acknowledged her recollection was better on the night at issue than six months later at trial. The accounts she gave that night were not "physically impossible or inherently improbable." (*People v. Young, supra*, 34 Cal.4th at p. 1181.) They constitute sufficient evidence to support a finding beyond a reasonable doubt that Berry possessed the shotgun—and fired it—at a point when Patrick was merely sitting in his truck refusing to leave, and that Berry thus had no reasonable basis to perceive an imminent threat of great injury. (See *People v. Brady* (2018) 22 Cal.App.5th 1008, 1018 [evidence of lack of aggression by assault victim enabled jury to find defendant did not reasonably perceive imminent threat].)

On appeal, Berry notes Patrick had an ongoing dispute with him, had challenged him to fight earlier that day, and had refused to leave Heather's property when asked. But this argument asks us to reweigh the evidence, which is not our role. (*People v. Lindberg, supra*, 45 Cal.4th at p. 27.) Berry also relies on Lonnie's testimony that he saw Patrick with a gun and Heather's testimony that, at the time of trial, she believed he had one. But the jury was free to disbelieve that testimony. Heather acknowledged she did not see Patrick with a gun. While she referred without explanation to the

video she had taken, Berry has never contended the video showed Patrick at all, let alone with a gun.  As for Lonnie, he specified in his 911 call he saw "one" gun, without saying more.  Only at trial did he state that the one gun he saw was a pistol held by Patrick.  But Lonnie acknowledged seeing Berry and hearing a shotgun blast, and Berry admitted holding and firing a shotgun.  A reasonable jury could disbelieve Lonnie's testimony that the one gun he saw was a pistol held by Patrick.  (See *People v. Jones* (1990) 51 Cal.3d 294, 314 ["it is the exclusive province of the trial judge or jury to determine the credibility of a witness"].)

## II.

### *Section 29800(a)(1) is Not Unconstitutional.*

Next, Berry contends section 29800(a)(1) violates the Second Amendment as construed in *Bruen*, which changed the law governing how courts must analyze constitutional challenges to statutes restricting the right to bear firearms.  (See *Bruen*, *supra*, 142 S.Ct at pp. 2125–2126.)  But several courts have addressed—and rejected—that contention.  (*People v. Odell* (2023) 92 Cal.App.5th 307, 317 (*Odell*) [rejecting challenge under *Bruen* to section 29800(a)(1)]; *People v. Alexander* (2023) 91 Cal.App.5th 469, 480 (*Alexander*) [same]; accord, *People v. Ceja* (2023) 94 Cal.App.5th 1296, 1301– 1302 [similar; rejecting challenge to statute barring felons from possessing ammunition].)

*Alexander* and *Odell* held that the change in analytic method mandated by *Bruen* did not affect the constitutionality of statutes barring felons from possessing firearms.  (*Odell*, *supra*, 92 Cal.App.5th at p. 317; *Alexander*, *supra*, 91 Cal.App.5th at pp. 478–480.)  We have held that *Bruen* "did not expand 'the categories of people who may lawfully possess a gun,' " and that felons are "squarely in a category where gun possession is off-limits due to their prior criminal conduct."  (*In re D.L.* (2023) 93 Cal.App.5th 144, 165–166

8

[rejecting facial constitutional challenge to section 25850, barring possession of a loaded firearm, and citing *Alexander* and *Odell* with approval].)

*Alexander* and *Odell* foreclose Berry's challenge to section 29800(a)(1). He does not try to distinguish those cases based on factual differences from his case. (See *In re D.L.*, *supra*, 93 Cal.App.5th at p. 157 [facial challenge considers only a statute's text, not its application to individual circumstances].) Nor does he claim any California authority has disagreed with those decisions. He deems the reasoning in *Alexander* "flawed" but makes only arguments raised and rejected in that case. (*Alexander*, *supra*, 91 Cal.App.5th at pp. 478–480.) We continue to agree with that opinion and with *Odell*, *supra*, 92 Cal.App.5th at pages 316–317, so we reject Berry's constitutional challenge to his conviction.

## DISPOSITION

The judgment of conviction is affirmed.

STEWART, P. J.

WE CONCUR:

MILLER, J.
MARKMAN, J.*

---

\* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9