Filed 3/6/24  P. v. Berry CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097133 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE003052) |
| v. | |
| RONALD BERRY, | |
| Defendant and Appellant. | |

Defendant Ronald Berry was convicted of 25 counts of sexually abusing two female minor victims, D. and N.  As to N., defendant contends the evidence is insufficient to establish one count of lewd and lascivious acts and one count of sexual intercourse.  Defendant further argues there is insufficient evidence to establish three of his seven counts of lewd and lascivious acts with D.  Defendant also argues the minute order from sentencing and the abstract of judgment do not reflect the correct amount of fines and fees imposed.  We affirm the judgment and order the court to correct the abstract of judgment.

1

# FACTUAL AND PROCEDURAL BACKGROUND

## I

### *Allegations Against Defendant*

As to N., defendant was charged with eight counts of committing a lewd and lascivious act by use of force or fear with a child under the age of 14 years (counts one, three, five, seven, nine, twelve, thirteen, & fourteen);[1] three counts of sexual intercourse or sodomy with a child 10 years old or younger (counts two, four, & six);[2] and three counts of oral copulation or sexual penetration with a child 10 years old or younger (counts eight, ten, & eleven).  Counts one through eleven were all alleged to have occurred between August 2016 and August 2019, while counts twelve through fourteen were all alleged to have occurred between August 2018 and August 2020.

As to D., defendant was charged with seven counts of committing a lewd and lascivious act with a child younger than 14 years old based on penis to genitalia contact (counts fifteen, sixteen, seventeen, eighteen, twenty, twenty-one, & twenty-two); one count of committing a lewd and lascivious act with a child younger than 14 years old based on penis to mouth contact (count nineteen); one count of committing a lewd and lascivious act with a child aged between 14 to 15 years based on penis to anus contact (count twenty-three); one count of committing a lewd and lascivious act with a child aged

---

[1]     Count one alleged the act was "penis to genitalia the first time."  Count three alleged the act was "penis to genitalia when he pushed his penis in further."  Count five alleged the act was "penis to genitalia with him below her."  Count seven alleged the act was fingers to genitalia.  Count nine alleged the act was sex toy to genitalia.  Count twelve alleged the act was penis to mouth.  Count thirteen alleged the act was "penis to genitalia on the couch the last time."  Count fourteen alleged the act was "penis to anus when he positioned her facedown."

[2]     Count two alleged the act was "penis to genitalia the first time, same act as count one."  Count four alleged the act was "penis to genitalia when he pushed his penis in further, same event as count three."  Count six alleged the act was the same as count five.

between 14 to 15 years based on penis to genitalia contact (count twenty-four), and two counts of sexual intercourse with a minor (counts twenty-five & twenty-six). Counts fifteen through twenty-one were alleged to have occurred between September 2002 and September 2003. Count twenty-two was alleged to have occurred between September 2002 and 2005. Counts twenty-three through twenty-four were alleged to have occurred between September 2003 and September 2005. Count twenty-five was alleged to have occurred between September 2005 and September 2006, and count twenty-six was alleged to have occurred between September 2006 and September 2007.

Several enhancements and aggravating factors not relevant here were further alleged.

## II

### *Evidence*

Given defendant's contentions, we focus our description of the facts on the counts that defendant is challenging (namely counts three and four, and the seven counts of vaginal intercourse with D. while she was 13 years old).

### A

### *D.'s Testimony*

D., who was 32 years old at the time of trial, testified she was 12 years old when her mother started dating defendant.[3] He moved in with them soon after, and he became a father figure to her. He often drove her to school or took her to get food.

About three to four months after he moved in, defendant started touching her breasts, saying he wanted to "get [her] ready for a boyfriend and teach [her] how to be a woman." He then progressed to touching her vagina. Defendant first had sexual intercourse with her when she was 13. She initially testified she did not remember how

---

[3]    D. was born in September 1989.

many times they had intercourse when she was 13. Ultimately, she testified it was "more than five times," but she did not think it was "more than 10 times."

D. recalled the circumstances of four specific times defendant had intercourse with her when she was 13. The first time, she was lying on her bedroom floor and defendant was on top of her. He partially inserted his penis, but he stopped at her request because it hurt. He tried again a few days later, again on the floor in her bedroom. This time, he fully penetrated her vagina and ejaculated. It was again painful for her. D. also described another time defendant had intercourse with her in the laundry room, with her sitting on the dryer or the washer. Another time, he had intercourse with her in the back seat of a car. The prosecutor then asked if there was "[a]nything else that [she] c[ould] recall about sexual intercourse happening when [she] w[as] 13?" D. responded, "Not at the age of 13 -- [¶] -- no."

After defendant started having sexual intercourse with her, D. complied with defendant's request to orally copulate him when she was 13 years old. That was the only time she orally copulated him when she was 13. The prosecutor asked if there was "anything else" that occurred while she was 13, beyond the five to 10 instances of sexual intercourse, and D. responded, "No." But she was unsure if he had used his hands to touch the skin of her vagina while she was 13.

The sexual abuse continued after D. turned 14. Defendant had sexual intercourse with D. a couple of times a week, which increased to multiple times a week after she turned 17. She remembered that, after she had turned 14, defendant had sexual intercourse with her in his car parked near a grocery distribution center with a "giant Coca Cola bottle" next to it. She got pregnant when she was 14 and had an abortion. Defendant had anal intercourse with her once or twice. Defendant and D. moved in together when she was 16 or 17, and D. thought of him as her boyfriend. The two finally broke up when she was 19 or 20.

4

When asked how well she remembered what happened between her and defendant, D. testified that, on a scale of one to 10, where 10 signified she remembered everything and one signified she did not remember very much, she was a "[f]ive or six." She acknowledged that she remembered "some stuff," but had "blocked out" other "stuff."

B

*N.'s Testimony*

N., who was 13 years old at the time of trial,[4] testified that defendant married N.'s mother and moved in with the family when N. was about seven or eight years old. Defendant regularly looked after N. and her siblings after school while N.'s mother was at work. N. initially looked to him as a father figure.

When N. was eight years old, defendant started putting his hand down N.'s pants and touching her vagina through her underwear. He also digitally penetrated her vagina about two to four times. And he inserted a sex toy into her vagina once or twice.

N.'s mother was not home the first time defendant tried to have sexual intercourse with N. Defendant asked her to come to his room and close the door behind her. N. remembered the door was locked after she was in the room, but she was not sure who locked it. He told her to sit on the bed, put on a blindfold, lie down, and take off her pants and underwear. She then felt him trying to put his penis into her vagina. He was able to get the tip in but stopped because N. said it hurt. N. left to use the bathroom. When she returned, she said she did not want to do that again because it hurt. Defendant told her not to tell anyone about what happened. N. gave conflicting testimony about her age during this first incident of sexual intercourse. She initially could not remember how old she was but recalled they were living in a house. She later testified she was eight at the time.

_____

**4**      N. was born in August 2008.

5

N. testified that defendant again attempted sexual intercourse with her about a month after the first incident, again in his bedroom. Over the next few months, defendant continued to try to put his penis in N.'s vagina, and "after time, he w[as] . . . able to put it in all the way." N. initially testified she could not remember how many times they had sexual intercourse, but then said it was "about four times." Each time after they had sex, defendant asked her to make a list of things she wanted as a gift, and defendant would buy things for her. Defendant used a condom each time he engaged in a sexual act with N., even if it was not intercourse.

Although N. did not remember the details about each individual time defendant had sexual intercourse with her, she remembered one incident where, at defendant's direction, she was on top of defendant. She said she needed to go to the bathroom, and the incident ended. Defendant seemed mad. She did not remember how old she was, but this happened at the house.

N. remembered another time when defendant had sexual intercourse with her. She again said she had to go to the bathroom, and defendant resumed having intercourse with her when she returned.

N. also remembered another incident that occurred at the house around Valentine's Day, or about two to three months after the first time defendant had intercourse with her. Defendant picked N. up early from school and said he was taking her home so they could make something special for N.'s mom and then "do something." N. understood this meant defendant wanted to have sexual intercourse with N. When N. was lying on the couch, defendant had sexual intercourse with her, and defendant was able to fully penetrate her for the first time. He told her his previous attempts were "baby steps" as he tried to "get it in farther and farther." N. said it hurt and started crying, so defendant turned on the television to "distract" her. They then moved from the couch to the table, defendant resumed having sexual intercourse with her, and eventually returned to the

6

couch. Defendant inserted his penis again but stopped when she started bleeding. This was the last time defendant had sexual intercourse with her.

N. testified defendant orally copulated her once while she was nine years old and they were living in the house. Defendant stopped when N. asked. Defendant also had anal sex with N. once, which N. found painful and scary.

After they moved to an apartment, N.'s mother had lost her job and was around the house more, so defendant had stopped having sexual intercourse with N. But defendant had N. orally copulate him about four times.

### III

*Closing Arguments*

During closing arguments, the prosecutor described the 14 counts involving N., explaining that counts one and two involved the first time defendant inserted his penis into N.'s vagina. The prosecutor noted defendant had called N. into the bedroom, told her to get undressed, put a blindfold on her, and then inserted the tip of his penis into her vagina. Counts three and four were "the second time the defendant inserts his penis into [N.], and that's when she said he went in a little bit deeper the second time. First time was just the tip. Next time he went in a little bit deeper." Counts five and six were when they had sexual intercourse while she was on top. Count thirteen was when they had sex on the couch on Valentine's Day. The prosecutor noted defendant had tried to insert his penis as far as he could, and N. found it painful and was crying. Defendant had turned on the television to relax N., but she ended up bleeding.

The prosecutor then described the 12 counts involving D., noting that D.'s "testimony consisted of a lot of sexual acts. She described having sex all the time. She said it was more than five times, but less than ten times when she was 13 years old," with the frequency increasing after she turned 14. There were seven counts for sexual intercourse when D. was 13 years old, and D. "was able to describe several of those instances." D. said she was on the floor the first time defendant tried to insert his penis

7

into her vagina. He was only able to get a bit in, and he stopped when D. said it hurt. This was "[a] very similar experience as [N]." He tried again a few days later and was able to fully insert his penis. D. also described defendant having sex with her in the laundry room, in the car near the Coca-Cola building, with it happening "regularly" either in her bedroom or when they were "out and about."

## IV

### *The Jury Verdict And Sentencing*

In July 2022, a jury found defendant guilty of all counts except count eleven. The jury found true the great bodily injury enhancement in count twenty-four. All the alleged aggravating circumstances were found true, except one circumstance in counts nineteen and twenty-five, and two circumstances in count twenty-six.

In August 2022, the trial court sentenced defendant to prison for an aggregate determinate term of nine years eight months and an aggregate unstayed indeterminate sentence of 520 years to life. The court also imposed a $10,000 restitution fine, a corresponding $10,000 parole revocation fine (suspended unless parole is revoked), and "only minimum mandatory fees and fines. Nothing above [the] minimum. Nothing that's not mandatory."

Even though the criminal conviction assessment should have been $750 total (or $30 for each of the 25 counts) (Gov. Code, § 70373) and the court operations fee should have been $1,000 (or $40 for each of the 25 counts) (Pen. Code, § 1465.8, subd. (a)(1)), both the minute order and the abstract of judgment list a criminal conviction assessment of $1,000 and a $750 court operations fee.

## DISCUSSION

## I

### *Sufficiency Of The Evidence*

Relying on *People v. Jones* (1990) 51 Cal.3d 294 (*Jones*), defendant challenges the sufficiency of the evidence for counts three, four, and twenty through twenty-two.

Turning first to defendant's allegations regarding the counts involving N., defendant argues counts three and four (i.e., committing a lewd and lascivious act by use of force or fear with a child under the age of 14 years and sexual intercourse or sodomy with a child 10 years old or younger, where the act was "penis to genitalia when he pushed his penis in further") are either (1) not supported by the evidence or (2) duplicates of the act in count thirteen (i.e., "penis to genitalia on the couch the last time"). Despite N.'s repeated testimony stating there were four acts of sexual intercourse, defendant notes that she provided specific details about only three acts of sexual intercourse, including the first time (counts one & two), the time when she was on top (counts five & six), and the final time on the couch on Valentine's Day (count thirteen). According to defendant, N. never testified that there was a time where defendant pushed his penis in further, as alleged in counts three and four. As such, argues defendant, N. must have been confused and referring to count thirteen, which was when defendant was finally able to fully insert his penis into N.'s vagina.

Defendant makes a similar argument regarding the seven counts involving vaginal intercourse with D. when she was 13 years old. Despite D.'s testimony that, while she was 13, defendant had vaginal intercourse with her more than five times but not more than 10 times, defendant notes that D. provided details regarding only four of these alleged acts. In addition, notes defendant, when the prosecutor asked if there was anything else that D. remembered about sexual intercourse while she was 13, D. responded "no." Defendant further argues the prosecutor mischaracterized the generic evidence during closing argument. Defendant takes issue with the prosecutor's statements during closing argument that defendant was regularly having sex with D. in her bedroom and in his car, including once next to a large Coca-Cola bottle, when D.'s testimony indicated none of this happened until after she had turned 14. As such, defendant argues, while there is sufficient evidence to establish four of the counts

9

(namely, counts fifteen through eighteen), the evidence is insufficient to support three of the counts (namely, counts twenty through twenty-two).

A

*Legal Background*

"In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt.  We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt.  [Citation.]  We neither reweigh the evidence nor reevaluate the credibility of witnesses.  [Citation.]  We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence.  [Citation.]  If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.)

When, as here, a young victim has been repeatedly molested over a substantial period by someone living in the home, that victim may be able to provide only " 'generic' " testimony about the molestation because he or she has "no practical way" of remembering specific incidents, or even all of the incidents.  (*Jones*, *supra*, 51 Cal.3d at pp. 299-300, 305.)  As *Jones* explains, such evidence can be sufficient, so long as the victim describes (1) "*the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (*e.g.* lewd conduct, intercourse, oral copulation or sodomy)";  (2) "the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (*e.g.* 'twice a month' or 'every time we went

10

camping')"; and (3) "*the general time period* in which these acts occurred (*e.g.* 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period." (*Id.* at p. 316.) Although further details about the time, place, or circumstances of the assaults "may assist in assessing the credibility or substantiality of the victim's testimony," they are "not essential to sustain a conviction." (*Ibid.*) For example, a victim's testimony that she was raped " 'almost every night' " over a 14-month period is sufficient because "the victim specified the type of conduct involved (rape) and its frequency ('almost every night' for three months), and confirmed that such conduct occurred during the limitation period. Nothing more is required to establish the substantiality of the victim's testimony in child molestation cases." (*Ibid.*)

B

*Analysis Of Counts Three And Four*

Despite defendant's contentions, substantial evidence supports that count three (and the related count four) was a separate act from count thirteen. Although N. could not recall the details of each time they had sexual intercourse, she testified that they did so "about four times." She explained she was eight years old when defendant first attempted to insert his penis into her vagina while she was wearing a blindfold. Defendant continued trying to fully insert his penis into her vagina over the next few months, and he was eventually able to do so the final time while they were on the couch on Valentine's Day (or about three months after the first time). N. also remembered another time defendant attempted sexual intercourse with her on top, and another time when he briefly interrupted having intercourse so she could use the bathroom but then resumed after she returned. N.'s testimony provides substantial evidence that defendant attempted to have sexual intercourse with her four times over the course of three months when she was eight years old, with defendant inserting his penis further each time and eventually fully penetrating her on Valentine's Day. Although N. may not have provided

many additional specific details about counts three and four, this goes to the weight of the evidence, not its sufficiency.  (See *Jones*, *supra*, 51 Cal.3d at p. 316.)

C

*Analysis Of Counts Twenty Through Twenty-Two*

We also find no merit to defendant's contention that we should overturn counts twenty through twenty-two because there was insufficient evidence to support three of the seven counts of vaginal intercourse with D. while she was 13 years old.  D. testified that, while she was 13, defendant had vaginal intercourse with her "more than five times" but not "more than 10 times."  Although she provided specific details about only four of those times and acknowledged she could not remember everything that happened with defendant, her testimony about the total number of times they had intercourse while she was 13 was sufficient to establish the finding they had vaginal intercourse seven times.  Just as with the evidence involving N., the lack of specific details about three of the seven times goes to the weight of the evidence, not its sufficiency.  (See *Jones*, *supra*, 51 Cal.3d at p. 316.)  The prosecutor's overview of defendant's many sexual acts with D. during closing argument also does not impact the sufficiency of the evidence regarding the acts that occurred while D. was 13.

II

*Fines And Fees*

During sentencing, the court imposed a $10,000 restitution fine, a corresponding $10,000 parole revocation fine (suspended unless parole is revoked), and the minimum mandatory fees and fines, indicating it was imposing a $30 criminal conviction assessment per count (or $750 total for the 25 counts for which defendant was convicted) (Gov. Code, § 70373) and a $40 court operations fee per count (or $1,000 total) (Pen. Code, § 1465.8, subd. (a)(1)).  Both the minute order and abstract of judgment appear to have these sums transposed and incorrectly list a criminal conviction assessment of $1,000 and a $750 court operations fee.  We agree with defendant that the abstract of

12

judgment must be corrected.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [an appellate court may order the correction of an abstract of judgment that is incorrect or does not accurately reflect the oral pronouncement of judgment].)

DISPOSITION

The trial court is directed to prepare a corrected abstract of judgment in accordance with this opinion and to forward a certified copy to the Department of Corrections and Rehabilitation.  The judgment is affirmed.


/s/_____
ROBIE, Acting P. J.


We concur:



/s/_____
DUARTE, J.



/s/_____
KRAUSE, J.