Filed 5/29/24  P. v. Tapia CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ELIAS TAPIA, JR.,<br><br>    Defendant and Appellant. | B330301<br><br>(Los Angeles County<br>Super. Ct. No. NA025820) |

APPEAL from an order of the Superior Court of Los Angeles County, James D. Otto, Judge.  Affirmed.

Alan Siraco, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo, and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

In 1997, defendant and appellant Elias Tapia, Jr. and codefendant Juan Valenzuela were convicted of the second degree murder of Norman LaGrone.  (Pen. Code,[1] § 187, subd. (a).) Tapia was sentenced to 15 years to life in prison, plus a determinate term of 4 years.

In 2019, Tapia filed a petition for vacatur of his murder conviction and resentencing under section 1170.95 (now § 1172.6).  The trial court found that Tapia made a prima facie showing of eligibility under the statute and was entitled to an evidentiary hearing.  After the hearing, the court denied the petition.

Tapia appealed the trial court's order.  Because it was unclear whether the trial court employed the proper standard, we reversed and remanded the matter for further proceedings.  On remand, the trial court found that Tapia was guilty of murder beyond a reasonable doubt.

Tapia now appeals the trial court's second order denying his petition, arguing that there is not substantial evidence to support the trial court's findings.  We affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY

### *The Murder*

At the preliminary hearing, Kevin Moran testified that he and LaGrone were talking outside a liquor store at about 1:30

---

[1] All further statutory references are to the Penal Code.

2

a.m. when a group of men including Tapia and Valenzuela approached them.[2]  The men said something to LaGrone and then one of them slapped him.  Moran was confused and asked LaGrone what was going on.  The man hit LaGrone again.  As Moran started to ask what was happening a second time, Tapia ran at Moran from the side and struck Moran in the side of his face with a baseball bat.  The impact knocked Moran to the ground.  Valenzuela "snatched" the bat from Tapia and hit LaGrone with it, knocking LaGrone to the ground.  Valenzuela struck LaGrone in the face with the baseball bat while Tapia kicked LaGrone repeatedly.  Valenzuela was swinging the bat hard from above his shoulder, like he was getting ready to hit a baseball.  Valenzuela hit LaGrone "repeatedly," and "[Tapia] was constantly kicking [LaGrone] while [Valenzuela] was hitting [LaGrone] with the baseball bat."  Tapia kicked LaGrone in the face while he was just lying "unconscious" or trying to get up; Tapia kicked him like kicking a football, in the face and on the side of the head, and he stomped on his face.  Moran reached for LaGrone, but when he saw a group of about 13 or 14 men approaching them, he let go and ran to get help.

Moran could see Tapia and Valenzuela continuing to beat LaGrone.  LaGrone tried to get up several times, but they knocked him to the ground.  LaGrone then laid on the ground unconscious as the men continued to beat him.  The attack lasted for 15 to 20 minutes.

Long Beach Police Department Officers David Hendricks and Brian Bell responded to the scene.  When the officers arrived,

---

[2] The trial court found that Moran was an unavailable witness; his preliminary hearing testimony was read into the record for the jury.

LaGrone was unconscious but breathing. He had blood on his face and there was a pool of blood on the sidewalk next to his head. There was vomit on his face and on the sidewalk as well. LaGrone's head was swollen to the size of a basketball. LaGrone was transported to the hospital. He died approximately one month later.

Dr. Eugene Carpenter, a medical examiner for the Department of the Coroner, Los Angeles, reviewed LaGrone's autopsy records. LaGrone was in a coma when he was admitted to the hospital. Dr. Carpenter opined that LaGrone died of blunt force trauma to the head that resulted in an infection of the brain tissue. The blunt force trauma also led to pneumonia and an infection in LaGrone's lung and in his blood. LaGrone had inhaled his own vomit, which entered his lungs and caused the pneumonia.

### *Trial*

At trial, the jury was instructed regarding implied and express malice murder, direct aiding and abetting, and murder as a natural and probable consequence of aiding and abetting an assault. The prosecutor argued all three theories of liability for murder in closing argument.

The jury found Tapia guilty of second degree murder.

### *Appeal*

Defendants appealed and another panel of this court ordered that the abstract of judgment be modified to reflect the

correct parole revocation fine, but otherwise affirmed the judgment.

### *Section 1170.95 Petition*

In 2019, Tapia filed a petition for resentencing under former section 1170.95, claiming that he was convicted of second degree murder under a natural and probable consequences theory. The People opposed the petition, arguing Tapia was not entitled to relief because the evidence at trial clearly established that he personally murdered LaGrone. The trial court found that Tapia made a prima facie showing of eligibility because the jury was instructed on the natural and probable consequences theory of murder. After holding an evidentiary hearing on the matter, the trial court denied the petition.

Tapia appealed, and another panel of this court reversed and remanded the matter to the trial court to clarify whether it applied the correct standard or, if it applied an incorrect standard, to independently evaluate the facts to determine, beyond a reasonable doubt, whether Tapia was guilty of murder under California law as amended by the changes to section 188 or 189 made effective January 1, 2019.

On remand, the trial court found beyond a reasonable doubt that Tapia was guilty of murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019.

Tapia timely appealed.

## DISCUSSION

Effective January 1, 2019, the Legislature amended sections 188 and 189 "as to the 'felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Sen. Bill No. 1437 (2017–2018 Reg. Sess.); Stats. 2018, ch. 1015, § 1, subd. (f).) As amended, the law defining malice provides that except for first degree felony murder, 'in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3); *People v. Eynon* [(2021)] 68 Cal.App.5th [967,] 974.) By this change, the Legislature intended that '[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea.' (Stats. 2018, ch. 1015, § 1, subd. (g).)" (*People v. Basler* (2022) 80 Cal.App.5th 46, 54, fn. omitted.)

Pursuant to section 1172.6, subdivision (a)(1) to (3), a defendant must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of . . . murder under the natural and probable consequences doctrine . . . [;] [¶] (2) The petitioner was convicted of murder . . . following a trial . . . [;] [¶] [and] (3) The petitioner could not presently be convicted of murder . . . because of changes

6

to [s]ection 188 or 189 made effective January 1, 2019." (See *id.*, subd. (b)(1)(A).)

Where, as here, after appointment of counsel, briefing, and hearing, the petitioner has made a prima facie showing of entitlement to relief, the court issues an order to show cause setting an evidentiary hearing. (§ 1172.6, subd. (c), (d)(1) & (3).)

"At the hearing . . . the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . . If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

The trial court acts as the finder of fact when determining whether the prosecution has met its burden beyond a reasonable doubt. (*People v. Clements* (2022) 75 Cal.App.5th 276, 296–297 (*Clements*); see *People v. Gentile* (2020) 10 Cal.5th 830, 855 [section 1172.6 "requires the superior court to determine on an individualized basis, after considering any new or additional evidence offered by the parties, whether the defendant is entitled to relief"], superseded by statute on another ground as stated in *People v. Birdsall* (2022) 77 Cal.App.5th 859, 868.)

"We review the trial court's factfinding on the question of whether a defendant committed a murder under a still-valid theory for substantial evidence. (Clements, *supra*, 75 Cal.App.5th at p. 298.) We analyze the record in the light most favorable to the trial court's finding and determine if there is sufficient substantial evidence to find the defendant guilty

7

beyond a reasonable doubt.  (*People v. Becerrada* (2017) 2 Cal.5th 1009, 1028; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087.) 'Our job on review is different from the trial judge's job in deciding the petition.  While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' (*Clements*, at p. 298.)  We will not reverse unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  We must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' (*People v. Jones* (1990) 51 Cal.3d 294, 314.)  'The same standard applies when the conviction rests primarily on circumstantial evidence.' (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  'An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence.' (*People v. Maury* (2003) 30 Cal.4th 342, 396.)" (*People v. Didyavong* (2023) 90 Cal.App.5th 85, 97 (*Didyavong*).)

### *Analysis*

Tapia argues that the record contains insufficient evidence to support the trial court's order.  Tapia attempts to distinguish his case from that of the defendants in *Didyavong, supra*, 90 Cal.App.5th 85, and *People v. Vernon* (1979) 89 Cal.App.3d 853 (*Vernon*).

8

In *Didyavong*, the defendant was one of a group of men who beat and shot the victim to death. (*Didyavong*, supra, 90 Cal.App.5th at pp. 90–92.) The group held the victim on the ground, beating and kicking him until one of the men shot him. (*Id*. at p. 90.) The defendant was one of the men who participated in the initial beating, and used a baseball bat. (*Ibid*.) After the victim had been shot, the defendant hit him in the head with the bat one last time before fleeing the scene with the others. (*Id*. at pp. 90–91.) On appeal following the denial of his section 1172.6 petition, the defendant argued that the person who fired the gun caused the victim's death and that there was insufficient evidence to establish that the defendant acted with malice. The Court of Appeal disagreed, stating: "Although the cause of death was gunshot wounds, [the defendant] aided the commission of the life-endangering act of the violent, life-threatening retaliation. [The victim] was kicked, beaten with a bat and a lead pipe, and stabbed multiple times with a screwdriver. [The defendant] actively participated by beating [the victim] with a bat while [the victim] was held down. Even if [the defendant] did not plan for murder to occur, his participation in the violent attack and his use of a weapon to beat [the victim] demonstrates his participation in the commission of a crime for which the natural consequences are dangerous to human life. Moreover, [the defendant's] use of a bat to smack [the victim's] skull after [the victim] had been shot, even as the other gang members ran back to their cars, demonstrates an awareness that he was endangering [the victim's] life." (*Id*. at p. 99.) The Court of appeal affirmed the order denying the defendant's section 1172 petition. (*Ibid*.)

In *Vernon, supra*, 89 Cal.App.3d 853, at page 859, a group of men including the defendants kicked the victim, who was on the ground in the head, shoulders, waist, and hips. One of the men then took a knife and slashed the victim's throat. (*Ibid*.) At trial, a medical examiner testified that there were multiple causes of death, but that the blows to the head alone would have killed the victim. (*Ibid*.) On appeal, the defendants argued that there was insufficient evidence to support their convictions for manslaughter. (*Id*. at p. 869.) The court of appeal affirmed the judgment, observing "[w]e do not perceive this as a closely balanced case in which there is grave doubt as to defendant['s] guilt." (*Id*. at pp. 860, 870.)

Tapia argues that the record does not include sufficient detail regarding his role in the assault or the manner in which he kicked LaGrone to support the inference that Tapia knowingly risked inflicting life-threatening injury. He asserts that unlike the defendants in *Didyavong* and *Vernon*, where the cause of death was directly related to the defendant's infliction of injury of the victim's head, here there was no evidence that Tapia's actions contributed to LaGrone's death.

We reject Tapia's contention. As in *Didyavong* and *Vernon*, here the evidence demonstrated that Tapia inflicted severe injury on LaGrone's head and that blunt force trauma to the head caused LaGrone's death. Moran testified that while Valenzuela viciously clubbed LaGrone in the head, Tapia constantly kicked LaGrone in the side of the head and stomped on his face. Valenzuela and Tapia continued to beat LaGrone until he vomited and lost consciousness. The attack continued for 15 to 20 minutes. LaGrone's head was covered in blood and vomit when officers arrived and had swollen to the size of a basketball.

10

In light of this evidence, it was reasonable for the trial court to infer that Tapia either intended to kill LaGrone or at the very least was aware that he was endangering LaGrone's life. Substantial evidence supports the trial court's conclusion that Tapia could still be convicted of murder as a direct aider and abettor or an actual perpetrator.

## DISPOSITION

We affirm the trial court's order denying Tapia's section 1172.6 petition.

NOT TO BE PUBLISHED.

MOOR, Acting P. J.

WE CONCUR:

KIM, J.

LEE, J.[*]

_____

[*] Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11